**In re Dennis CUMMINGS, Judge of the District Court, Fourth Judicial District at Bethel, Alaska.**

**No. S–13348.**

Supreme Court of Alaska.

July 16, 2009.

Before: MATTHEWS, EASTAUGH, CARPENETI, and WINFREE, Justices.

**Order of Suspension**

1. The Judicial Conduct Commission has referred to this court its findings and recommendation for suspension of Dennis Cum-

mings (respondent), a district court judge in Bethel. After an investigation and evidentiary hearing, six members of the commission voted to recommend that respondent "be sanctioned by a suspension and that prior to returning to the bench, the Judge receive additional training."

2. In judicial disciplinary proceedings, we conduct a de novo review of both the alleged judicial misconduct and the recommended sanction.[1] In doing so we recognize that judicial misconduct must be established by clear and convincing evidence.[2]

3. We have reviewed the record before the commission and the brief that respondent's counsel submitted to the commission.[3] Neither special counsel for the commission nor counsel for respondent has submitted a brief to this court specifically addressing the charges, the evidence, or the recommended discipline.

4. There is little doubt about what respondent actually did, although there is some dispute about what he intended. In early March 2008 he was presiding over the criminal jury trial of Christopher Leonard, who was charged with violating the terms of an ex parte domestic violence protective order issued to Leonard's wife. Although the protective order explicitly indicated that Leonard was not allowed visitation with his four children, a state trooper called as a witness by the prosecution testified on cross-examination at Leonard's criminal trial that the order did not prohibit contact between Leonard and his children. During a recess in the trial, respondent called a different trooper, Trooper Beaudoin, to the bench, handed him a note, and contemporaneously stated: "Just in case you want to go fishing."

The note respondent handed to Trooper Beaudoin stated: "Look at page 4 *DVRO* just above paragraph (d). About custody of children—☒ cannot be protected *no visitation.*" Respondent did not give a copy of the note to defense counsel that day. Respondent initiated a second ex parte contact about the note with Trooper Beaudoin later that day. The prosecutor informed defense counsel about the note, apparently after the trial day ended. This caused defense counsel to ask respondent at the beginning of the next trial day to dismiss with prejudice the charges pending against Leonard. At the ensuing hearing conducted by respondent that day, respondent provided an explanation in open court of his purpose in giving the note to the trooper and produced a second, but not identical, note that he then gave defense counsel. Although respondent initially recused himself, he continued to preside over the hearing until he ultimately granted defense counsel's unopposed motion for a mistrial.[4] Soon after the end of that hearing, respondent telephoned the commission's executive director. The commission initiated an investigation, conducted a probable cause hearing, and issued formal charges against respondent in June 2008. The commission took videotaped depositions of six witnesses and, in November 2008, held a two-day evidentiary hearing at which respondent testified under oath.

5. There are substantial discrepancies in the explanations respondent gave in open court at Leonard's trial, in his response to the commission's complaint, and at the evidentiary hearing, concerning his purpose in giving the note to the trooper. The commission's findings and recommendation resolved these discrepancies largely against respon-

1. *In re Curda,* 49 P.3d 255, 257 (Alaska 2002) (citing *In re Johnstone,* 2 P.3d 1226, 1234 (Alaska 2000); *In re Inquiry Concerning A Judge (Judge I),* 762 P.2d 1292, 1296 n. 4 (Alaska 1988)).

2. *Id.* at 257 (citing *Johnstone,* 2 P.3d at 1234; *In re Hanson,* 532 P.2d 303, 308 (Alaska 1975)).

3. Our consideration of this matter was delayed because a transcript of the commission's evidentiary hearing had not been prepared and transmitted with the commission record. The court will consider administratively whether to adopt a rule making it clear that the commission, in

forwarding its recommendations, must provide this court a transcript of the hearing. In the meantime, for future matters the commission should submit to this court a transcript of the hearing with the record no later than the last day for a respondent to file with us a response to a discipline recommendation.

4. The events of these two days are described in somewhat more detail in the commission's findings and recommendation (attached to this order as Appendix A).

dent. In our view, the record demonstrates by clear and convincing evidence that respondent intentionally made an ex parte communication to the prosecution team in a criminal case concerning an important fact relevant to the criminal charges.

6. We accept and agree with the commission's findings in paragraph 1 of its findings that passing the note on the first day of trial and making the initial comment to Trooper Beaudoin were ex parte communications and that the "fishing" comment created an appearance of impropriety, in violation of AS 22.30.011(a)(3)(A), (C), (D), and (E), and Canons 1, 2(A) and (B), 3(B)(2)(a) and (b), and 3(E) of the Alaska Code of Judicial Conduct. We accept and agree with the commission's findings in paragraph 2 of its findings that the additional communication with Trooper Beaudoin about the note at a subsequent break was an ex parte communication that created an appearance of impropriety, in violation of AS 22.30.011(a)(3)(A), (B), (C), (D), and (E), and Canons 1, 2(A) and (B), 3(B)(2)(a) and (b), and 3(E) of the Alaska Code of Judicial Conduct. We accept and agree with the commission's findings in paragraph 3 of its findings that respondent's misstatement of his intention to distribute similar notes to both parties created an appearance of impropriety, in violation of AS 22.30.011(a)(3)(A), (C), (D), and (E), and Canons 1, 2(A) and (B), 3(B)(2)(a) and (b), and 3(E) of the Alaska Code of Judicial Conduct. We accept and agree with the commission's findings in paragraph 4 of its findings that respondent created an appearance of impropriety by continuing with the matter after he initially recused himself, in violation of AS 22.30.011(a)(3)(A), (C), (D), and (E), and Canons 1, 2(A) and (B), 3(B)(2)(a) and (b), and 3(B)(7) of the Alaska Code of Judicial Conduct. We also accept and agree with the commission's mental state findings that respondent: (1) acted intentionally when he passed the note and followed up with the trooper; (2) either knowingly or negligently misstated that he consistently intended to pass both notes; and (3) was negligent in continuing to act after first recusing himself.

■ 7. Although the commission was unanimous in concluding that respondent's actions merit some form of sanction, two commissioners dissented from the commission's recommendation of suspension. Alaska Statute 22.30.070(c) authorizes this court to "reprimand, publicly or privately censure, or remove a judge for action ... which constitutes wilful misconduct in the office, ... conduct prejudicial to the administration of justice, or conduct that brings the judicial office into disrepute." The dissenting commissioners read AS 22.30.070(c) as implicitly withholding from us the power to suspend, theoretically leaving us with only a choice between public reprimand and removal, and not suspension, in this case. We nevertheless conclude that subsection .070(c) should not be read as a legislative attempt to withhold a power granted to this court by article IV, section 10 of the Alaska Constitution. That constitutional provision states in relevant part that "a justice or judge may be disqualified from acting as such and may be suspended, removed from office, retired, or censured by the supreme court upon the recommendation of the commission." [5] The constitution therefore explicitly authorizes us to suspend a judge upon the recommendation of the commission. We decline to read a contrary implicit limitation into AS 22.30.070(c)(3).

■ 8. We conclude that respondent's ex parte communications with a witness for the prosecution created the appearance of impropriety and constituted wilful misconduct in office, conduct prejudicial to the administration of justice, conduct that brings the judicial office into disrepute, and a violation of the Alaska Code of Judicial Conduct. We accept and agree with the commission's determinations that these were significant violations of ethical duty owed the legal system, and that they affected the ability of the system to fulfill its obligation to resolve disputes impartially and maintain the public trust. The commission considered the potential harm of each violation. As to passing the note, it first observed that it "may have made conviction of the defendant more like-

---

**5.** Alaska Const., art IV, § 10.

ly," a substantial harm. But the commission ultimately concluded that the potential harm of passing the note was minimal because the prosecution did not use the information and the prosecutor did not understand the note's relevance. We accept and agree with the commission's findings that the potential harm caused by all the breaches of duty was minimal. We accept and agree with the commission's findings concerning mitigators (respondent had no prior discipline record; there was no dishonest or selfish motive; respondent was relatively new to the bench; respondent has a reputation for truth and honesty; respondent is remorseful and recognizes that his conduct was wrong) and aggravators (respondent had at least one prior experience passing an ex parte note to a witness).

9. In discussing the appropriate sanction, the commission noted that 2.3 of the ABA Standards for Imposing Lawyer Sanctions provides that lawyer suspensions "generally . . . should be for a period of time equal to or greater than six months." The commission also observed that we have not applied this standard in a judicial discipline matter. It therefore deferred to us as to whether the six-month ABA "baseline" suspension period should be adjusted by aggravating or mitigating factors. The commission recommended that respondent be suspended, but did not recommend the duration of suspension.

■ 10. We conclude that a suspension of three months is appropriate. We apply to judicial discipline cases the same rule that we have applied in attorney discipline cases: if suspension is indicated, a six-month suspension is the baseline.[6] We then consider whether there should be a departure from the baseline on the basis of the harm to the

administration of justice and the presence of aggravating or mitigating factors. Here, we regard the violations as significant and potentially harmful to the administration of justice, because they might have unfairly affected the outcome of the criminal trial, by making the possibility of conviction more likely. But we conclude that the actual harm to the administration of justice was minimal in this case, because the prosecution did not use the information provided by respondent and the prosecutor did not understand the note's relevance. In this regard, we also note that the respondent could have called attention to an obvious legal error on the part of a witness, as long as he notified both parties of the matter. We next consider, as the commission found, that several mitigators[7]—and only one aggravator[8]—are present. Finally, we also conclude that the suspension should be without pay, resulting in a very significant loss of income to respondent.

11. We also require respondent, before returning to the bench, to acquire at his own expense additional training satisfactory to the commission. At a minimum, that training must generally cover the Code of Judicial Conduct, and must particularly cover the topics of ex parte communications, judicial impartiality, and the appearance of impropriety.

12. This order takes effect at 8:00 a.m. July 27, 2009.

FABE, Chief Justice, not participating.

### APPENDIX A

### IN THE SUPREME COURT FOR THE STATE OF ALASKA

In re **DENNIS CUMMINGS,**

---

**6.** *In re Inquiry Concerning a Judge (Judge II),* 788 P.2d 716, 723 (Alaska 1990) (applying the ABA Standards for Imposing Lawyer Sanctions in case involving judicial misconduct). Section 2.3 of the ABA's Standards for Imposing Lawyer Sanctions states that "[g]enerally, suspension should be for a period of time equal to or greater than six months." ABA STANDARDS FOR IMPOSING LAWYER SANCTIONS § 2.3 (1991). The commentary to that section points out that, "[w]hile it may be possible in some cases for a lawyer to show rehabilitation in less than six months, it is preferable to suspend a lawyer for at least six months

in order to ensure effective demonstration of rehabilitation."

**7.** Respondent has no prior discipline record, there was no dishonest or selfish motive, he is relatively new to the bench, he has a reputation for truth and honesty, he is remorseful, and he recognizes that his conduct was wrong.

**8.** Respondent previously passed a note ex parte to a witness.

Judge of the District Court, Fourth Judicial District at Bethel, Alaska,

Supreme Court No. S–13348

Alaska Commission on Judicial Conduct, Accusation No. 2008–004

## RECOMMENDATION FOR DISCIPLINE

### Procedures before the Commission

This matter was brought to the attention of the Alaska Commission on Judicial Conduct ("Commission") in mid-March 2008 and the Commission initiated an investigation on its own motion at a special teleconference meeting on March 20, 2008. At its regular meeting on May 19, 2008, the Commission determined that it would hold a Probable Cause Hearing in this matter. A Probable Cause Hearing took place by teleconference on June 19, 2008. At the conclusion of the Probable Cause Hearing, the Commission issued Formal Charges by unanimous vote. A Formal Disciplinary Hearing pursuant to [AS 22.30.011(b) ] and Alaska Commission on Judicial Conduct Rule 14 took place in Anchorage on November 17th and 18th. The attached Commission Determination recommends disciplinary action and is filed pursuant to Article IV, section 10 of the Constitution of Alaska, AS 22.30.011(d)(2) and Rule 406 of Alaska's Rules of Appellate Procedure.

SUBMITTED by the COMMISSION ON JUDICIAL CONDUCT, through its Executive Director, this 24th day of November 2008.

/s/

Marla N. Greenstein (Bar No. 9708048)

Executive Director

Commission on Judicial Conduct

## STATE OF ALASKA

## COMMISSION ON JUDICIAL CONDUCT

In the matter of the proceeding pursuant to AS 22.30.011(a) in relation to:

## DENNIS CUMMINGS

Judge of the District Court

Fourth Judicial District at Bethel

ACJC File No. 2008–004

## FINDINGS and RECOMMENDATION

The Commission on Judicial Conduct held a hearing in this matter on November 17 and 18, 2008 and took evidence. Judge Cummings was present and was represented by counsel, Jonathon Katcher. Special counsel for the Commission, Matthew Jamin, and counsel for the Judge presented evidence and argued. The Commission considered the evidence and arguments and unanimously agreed to the following findings by clear and convincing evidence:

1. On March 10, 2008, during a break in the first day of the trial in *State v. Christopher Leonard,* Judge Cummings passed a note to Trooper Joey Beaudoin, who had testified as a witness for the State. The note was Exhibit 23 at the hearing. The note referred to an exhibit admitted at the trial and implied that it was relevant to testimony provided by an earlier witness for the prosecution. Contemporaneously with the transfer of the note, Judge Cummings told Trooper Beaudoin, "This is in case you want to get together to go fishing sometime." At the time of the document transfer and oral remark, the State had not finished presenting its case. Passing the note was an ex parte communication. Making the statement about fishing was an ex parte communication and created an appearance of impropriety in violation of AS 22.30.011(a)(3)(A), (C), (D), and (E) and Canons 1, 2(A), 2(B), 3(B)(2)(a), 3(B)(2)(b), and 3(E) of the Alaska Code of Judicial Conduct.

2. At a subsequent break in the trial on March 10 2008 Judge Cummings asked Trooper Beaudoin if he had any questions about the note and Trooper Beaudoin told Judge Cummings that he did have a question, and did not understand the note by saying, "what was the note about?" This subsequent communication to Trooper Beaudoin was an ex parte communication and created an appearance of impropriety in violation of AS 22.30.011(a)(3)(A), (B), (C), (D), and (E) and Canons 1, 2(A), 2(B), 3(B)(2)(a), 3(B)(2)(b) and 3(E) of the Alaska Code of Judicial Conduct.

3. On the next day, March 11, Judge Cummings produced another note which he gave to Leonard's attorney. The note was hearing Exhibit 30. This note was created on March 10, was addressed to both attorneys, and referred to the same exhibit. However, at that time the Judge made a misstatement of his consistent intention to distribute similar notes to both parties. This misstatement of the Judge's intention created the appearance of impropriety in violation of AS 22.30.011(a)(3)(A), (C), (D), and (E) and Canons 1, 2(A), 2(B), 3(B)(2)(a), 3(B)(2)(b), and 3(E) of the Alaska Code of Judicial Conduct.

4. During the hearing on March 11, Judge Cummings, on his own motion, granted a mistrial. The prosecutor objected and pointed out that if the Judge granted a mistrial on his own, and not on the motion of either party, jeopardy would attach. Judge Cummings then recused himself, and indicated he would find another judge to continue with the trial or to hear a retrial of the matter. Then, after a short recess, Judge Cummings returned to the bench and stated he would continue with the trial. His continuing with the matter after he had recused himself created the appearance of impropriety in violation of AS 22.30.011(a)(3)(A), (C), (D), and (E) and Canons 1, 2(A), 2(B), 3(B)(2)(a), 3(B)(2)(b) and 3(B)(7) of the Alaska Code of Judicial Conduct.

The Commission did not find by clear and convincing evidence that Judge Cummings' report to the Executive Director of the Conduct Commission of the circumstances of his ex parte communication with Trooper Beaudoin was improper or constituted misconduct.

Article IV § 10 of the Alaska Constitution states "a ... judge ... may be suspended, removed from office, retired, or censured by the supreme court upon the recommendation of the commission." In deciding its recommendation, the Commission members analyzed the misconduct using the methodology from *In re Inquiry Concerning a Judge,* 788 P.2d 716 (Alaska 1990).

The Commission found that the ethical duty violated was to the legal system. Engaging in ex parte contact and failing to avoid the appearance of impropriety are significant violations that impact the ability of the legal system to fulfill its duty to impartially resolve disputes and maintain public trust.

The mental state which existed when the Judge passed the note and followed up with inquiry was intentional. The mental state which existed when the judge said that he consistently intended to pass both notes was either knowing or negligent. The mental state which existed when he continued to act after he had recused himself was negligent.

The potential harm which arose from passing the note is difficult to know. It may have made conviction of the defendant more likely, which would be a substantial harm. However, given the failure of the prosecution to use the information and the Assistant District Attorney's obvious failure to understand the relevance of the note seem to indicate that the potential harm was minimal. The potential harm of stating that the Judge always intended to provide similar notes to both parties was minimal. The potential harm from the Judge continuing to preside after his recusal was of minimal potential harm.

Aggravating and mitigating factors exist. The Judge has no prior disciplinary record. There was no dishonest or selfish motive. The Judge is relatively new to the bench. The Judge has a reputation for truth and honesty. The Judge has remorse for the events and recognizes that his conduct was wrong. The Judge had at least one prior experience passing an ex parte note to a witness.

Considering these factors, six members of the Commission voted to recommend to the Alaska Supreme Court that Judge Cummings be sanctioned by a suspension and that prior to returning to the bench, the Judge receive additional training.

The ABA Standards for Imposing Lawyer Sanctions provide in 2.3 "Generally suspension should be for a period of time equal to or greater than six months." Because the Alaska Supreme Court has not applied this specific standard to a judicial discipline matter, the Commission defers to the Court as to

whether this baseline length of suspension should be adjusted on the aggravating and mitigating factors discussed above.

Two members of the Commission believe that AS 22.30.070(c) does not authorize suspension and therefore recommend removal. Both of these members would recommend suspension if that sanction were available.

DATED AT NOME, ALASKA This 23rd day of November 2008.

/s/

BEN ESCH, Chairperson

Commission on Judicial Conduct

### STATE OF ALASKA

### COMMISSION ON JUDICIAL CONDUCT

In the matter of the proceeding pursuant to AS 22.30.01(a) in relation to:

DENNIS CUMMINGS

Judge of the District Court

Fourth Judicial District at Bethel

ACJC File No. 2008–004

### CONCURRING OPINION, DISSENTING AS TO SANCTION ONLY

COMMISSIONER FAYETTE, with whom COMMISSIONER SHELDON joins:

I submit this separate opinion to explain one facet of our decision in this case. I respectfully dissent as to the sanction recommended by the majority of the Commission.

I am in fundamental agreement with my fellow commissioners in this case. With a single discrete exception, I agree with all of the conclusions we have reached. I concur in the factual and legal conclusions stated in the commission's majority decision. I agree that Counts I through IV were proven by clear and convincing evidence. I also conclude that Count V was not proven. Finally, I agree with the factual synopsis and legal conclusions described in the majority opinion. Our findings as to these matters are unanimous.

I dissent only regarding the recommended sanction in this case. I dissent because the sanction that the majority of the Commissioners, and myself, deem most appropriate for Judge Cummings' misconduct—suspension—may not be authorized by statute. Because I conclude that the next lower sanction—censure—is inadequate, I part with my fellow commissioners, and recommend removal. I write separately to explain my reasoning.

### My conclusion

In my view, a judge's active, surreptitious, mid-trial, *ex parte* favoritism toward one litigant merits at least temporary, if not permanent, removal from the bench. In my view, reprimand or censure is inadequate to address the seriousness of this misconduct.

With this in mind, I was initially drawn toward suspension as an appropriate sanction. However, upon reflection, I am convinced that the legislature has not authorized suspension as an available sanction for Judge Cummings' misconduct.

### My conclusion that suspension is not authorized by law in this case

Our constitution states,

In addition to being subject to impeachment under section 12 of this article, a justice or judge may be disqualified from acting as such and may be suspended, removed from office, retired, or censured by the supreme court upon the recommendation of the commission.

Alaska constitution, Article IV, § 10.

The constitution further states that the "powers [ ] of the Commission [ ] shall be established by law." *Id.* The legislature has enacted a statute which provides,

The commission shall, after a hearing held under (b) of this section,

(1) exonerate the judge of the charges; or

(2) refer the matter to the supreme court with a recommendation that the judge be reprimanded, suspended, re-

moved, or retired from office or publicly or privately censured by the supreme court. AS 22.30.011(d)

Yet, this general statute is followed by another, more specific statute, which distinguishes available sanctions depending upon the nature of the misconduct. AS 22.30.070 provides,

> (b) On recommendation of the commission, the supreme court may reprimand, publicly or privately censure, or suspend a judge from office without salary when in the United States the judge pleads guilty or no contest or is found guilty of a crime punishable as a felony under state or federal law or of a crime that involves moral turpitude under state or federal law. [ ]
> (c) On recommendation of the commission, the supreme court may (1) retire a judge for disability that seriously interferes with the performance of duties and that is or may become permanent, and (2) reprimand, publicly or privately censure, or remove a judge for action occurring not more than six years before the commencement of the judge's current term which constitutes wilful misconduct in the office, wilful and persistent failure to perform duties, habitual intemperance, conduct prejudicial to the administration of justice, or conduct that brings the judicial office into disrepute. [ ]

AS 22.30.070(b)-(c).

Our commission has unanimously determined that Judge Cummings' conduct violates several provisions of the Code of Judicial Conduct. *See* AS 22.30.011(a)(3)(E). There can be no reasonable dispute that this constitutes "wilful misconduct," "conduct prejudicial to the administration of justice," and "conduct which brings the judicial office into disrepute," within the meaning of AS 22.30.070(c)(2). But, the same statute declares that suspension is not an authorized sanction for this category of misconduct. Ac-

cording to the statute, suspension is only authorized where a judge has been convicted of certain crimes. AS 22.30.070(b).

I must assume that the legislature's omission of the potential sanction of suspension from AS 22.30.070(c) was the product of purposeful drafting. Accordingly, I conclude that the legislature has intentionally taken away suspension as a potential sanction where the judge's misconduct does not constitute a proven criminal offense. My fellow commissioners disagree.

At summation, counsel for Judge Cummings argued that suspension is not an authorized sanction for this type of misconduct. Counsel called our attention to AS 22.30.070. In rebuttal argument, special counsel for the commission responded by directing us to AS 22.30.011(d). Discussion of the point at our hearing was very brief.

We did not have the benefit of written legal briefing or comprehensive argument on this point prior to our deliberations. This issue was raised only in oral summation at the very conclusion of our hearing. I regret that. I would have welcomed further discussion of this point.

### My view of the analogous ABA Standard and the appropriate sanction

The supreme court has directed us to the *ABA Standards for Imposing Lawyer Sanctions* (hereinafter "*ABA Standards*") for an analogous "theoretical framework" when fashioning sanctions upon judges. *In re Johnstone*, 2 P.3d 1226, 1237 (Alaska 2000); *Inquiry Concerning A Judge*, 788 P.2d 716, 723 (Alaska 1990). I am mindful that judges are held to higher standards than lawyers. *Inquiry Concerning A Judge*, 822 P.2d 1333, 1343 (Alaska 1991). I am aware that I must consider the ethical duty violated by the judge, the extent of actual or potential injury caused by the judge, the judge's mental state, and the presence of aggravating or mitigating factors.[9] *In re Johnstone*, 2 P.3d 1226, 1237 (Alaska 2000).

---

9. As I explain, I would find three *ABA Standards* mitigating factors (absence of prior record; inexperience as a judge, and remorse). I find two aggravating factors (multiple offenses, other deceptive practices during the disciplinary process). *See Inquiry Concerning a Judge*, 788 P.2d

716, 725 (Alaska 1990). Of these two aggravating factors, the second is very troubling. I base this finding upon Judge Cummings' flatly inconsistent statements and positions during the Commission's and the Judicial Council's investigation of this case.

The *ABA Standards* state that disbarment is appropriate where a lawyer makes an improper *ex parte* attempt to influence a trial participant and causes serious or potentially serious injury to a party, or causes significant interference with the outcome of a legal proceeding. *ABA Standards for Imposing Lawyer Sanctions,* (1992) § 6.31(b), at p. 23. Disbarment and removal are directly analogous professional sanctions. I conclude that this is the proper analogy for Judge Cummings' actions.

I regard Judge Cummings' misconduct as analogous to jury tampering. *See* AS 11.56.590 (procedurally improper direct or indirect communication with a juror with the intent to affect the outcome of an official proceeding). To me, the parallel is clear: Judge Cummings intentionally sought to quietly "tip off" the prosecution to a legal issue which he deemed significant, and which he apparently believed the testifying troopers and the prosecutor had missed. In my view, Judge Cummings sought to surreptitiously aid the prosecutor, either by encouraging him to pose a certain line of questions to the trooper, or by subtly encouraging the prosecutor to raise the issue as a proposed jury instruction or at closing summation. In my view, Judge Cummings was also tacitly "tipping his hand" as to how he would rule on this legal issue. This is to say that I believe that Judge Cummings acted intentionally to blunt a defense argument, and increase the chances of a criminal conviction, where a defendant may otherwise have secured acquittal.

At the conclusion of the March 10 trial day, I do not believe that Judge Cummings actually intended to convey the identical "tip" to the defense lawyer. He let pass too many opportunities to do so had that been his genuine intent. I also conclude that Judge Cummings' explanations during the investigation of this case regarding the "second note" are inconsistent. To me, Judge Cummings' initial "second note" explanation seems to have been invented on the bench at the outset of the March 11 hearing—only minutes after he had read the prosecutor's email, and realized that the prosecutor had disclosed the "first note" to the defense lawyer. His subsequent, contradicting explanations—in his answer to the commission's complaint, in his July 2008 deposition, and in his Judicial Council interview—*which occurred the very next day after his deposition*—I find to be irreconcilable.

I conclude that Judge Cummings' misconduct caused actual, serious harm to the litigants. His error triggered a mistrial. The defendant returned to jail to await another trial day, with Rule 45 reset, in derogation of his constitutional due process and speedy trial rights. The crime victim's constitutional right to timely disposition of the case was also compromised. The prosecutor eventually settled the case, but he doubtless discounted its sentencing value due to the procedural confusion that Judge Cummings had created.

I have also given weight to the testimony of Amber Terrell, who described a similar episode of Judge Cummings' surreptitious, pro-prosecution witness-coaching. Ms. Terrell's testimony went essentially un-rebutted.

I am mindful of Judge Cummings' self-report to the Judicial Conduct Commission's Executive Director. I give this little weight, however. I conclude that Judge Cummings only self-reported *after* he knew he was "caught," and *after* the defense lawyer forcefully (and appropriately) told Judge Cummings that he intended to pursue the issue further. In other words, Judge Cummings only self-reported in the sense that he contacted Ms. Greenstein before the defense lawyer did.

I am mindful of Judge Cummings' absence of a prior judicial disciplinary record. I have also noted Judge Cummings' contrite demeanor at our hearing. I also note his willingness to accept future guidance and training as he expressed at the conclusion of his testimony.

Notwithstanding the presence of some mitigating factors, I regard Judge Cummings' offense as aggravated, in light of the first three *Johnstone* factors (duty breached, harm caused, culpable mental state). *Johnstone,* 2 P.3d at 1237.

However, I do not regard censure as an appropriate sanction here.[10] When a judge actively and secretly assists one party in litigation, the litigants and the public should be extremely skeptical that the same judge will administer a fair trial to both sides in the future. One questions whether the public should assume that risk.

## Conclusion

I am unwilling to mitigate the sanction in this case to a censure. Nor do I wish the supreme court to misinterpret a vote for suspension as reflecting my concession that this case is less aggravated than I deem it to be.

In my view, the public's compelling interest in an impartial, fair and independent judiciary—in fact and in appearance—can only be vindicated by a sanction that includes Judge Cummings' disqualification from judicial office. Had that disqualification been a remedial and temporary one—in the form of a suspension, conditioned upon professional retraining, as special counsel advocated in summation, I would have been satisfied that the public's interest was served. But because I conclude that the legislature has not given us suspension authority in this case, I vote for a recommendation of removal from office.

Dated, this 24th day of November, 2008, at Anchorage, Alaska.

James Fayette

Commissioner

Commissioner Sheldon joins this concurring opinion and dissent.

Robert Sheldon

Commissioner

---

10. The baseline sanction for merely negligent conduct that creates only an appearance of impropriety is either private reprimand or public censure. *Inquiry Concerning a Judge,* 788 P.2d 716, 725 n. 13 (Alaska 1990). I conclude that Judge Cummings acted intentionally to improperly aid a litigant. Therefore, I reject reprimand and censure as appropriate sanctions.