*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| **In re Dennis Cummings,** | ) | Supreme Court No. S-14692 |
| | ) | ACJC File No. 2011-012 |
| Judge of the District Court, | ) | |
| Fourth Judicial District at | ) | O P I N I O N |
| Bethel, Alaska. | ) | |
| | ) | No. 6743 - January 18, 2013 |

Original Application from the Alaska Commission on Judicial Conduct.

Appearances: Karen Lambert, Jamin Law Office, Kodiak, Special Counsel for the Alaska Commission on Judicial Conduct. No appearance by Dennis Cummings, Bethel.

Before: Carpeneti, Chief Justice, Fabe, Winfree, and Stowers, Justices.

WINFREE, Justice.

## I. INTRODUCTION

In early April 2012 the Alaska Commission on Judicial Conduct (Commission) referred to us its unanimous recommendation for removal of Judge Dennis Cummings, a district court judge in Bethel. However in December 2011, Judge Cummings had announced his retirement and he retired shortly after we received the Commission's recommendation. Judge Cummings has not participated in this matter before us. Despite Judge Cummings's retirement, we consider this matter a live controversy — a judge's retirement does not extinguish the Commission's and this court's jurisdiction to complete disciplinary proceedings, and there are important policy

reasons to do so. After independently reviewing the record and the Commission's recommendation to remove Judge Cummings, we accept the Commission's recommendation for removal.

## II.    COMMISSION JURISDICTION AND WHY WE CONSIDER THIS MATTER

Article IV, section 10 of Alaska's Constitution creates the Commission.[1] Alaska Statute 22.30.011(a) authorizes the Commission to investigate alleged judicial misconduct, including violations of Alaska's Code of Judicial Conduct.[2] Upon finding probable cause that misconduct occurred, the Commission must hold a formal hearing.[3] After the hearing the Commission must either exonerate the judge or make a disciplinary recommendation and refer the matter to the Alaska Supreme Court.[4]

The Commission's jurisdiction extends to a retired judge if the alleged misconduct occurred and the investigation began before the judge retired.[5] We have explained that the plain meaning of AS 22.30.011(a)(3) "authorizes the [C]ommission to retain jurisdiction over a retired judge whose alleged misconduct occurs during a

---

[1]    Article IV, section 10 provides: "The powers and duties of the [C]ommission and the bases for judicial disqualification shall be established by law."

[2]    The preamble explains that the Code "is intended to establish standards for ethical conduct of judges."

[3]    AS 22.30.011(b).

[4]    AS 22.30.011(d).

[5]    *In re Johnstone*, 2 P.3d 1226, 1231-34 (Alaska 2000) ("Having properly acquired jurisdiction, the [C]ommission did not lose it merely because the judge subsequently opted to retire.").

period of active judicial service and who remained an active judge when the [C]ommission began its investigation."[6]

We also have explained "that a primary purpose of judicial discipline in Alaska is to protect the public rather than to punish the judge."[7] Judicial discipline keeps the public "informed of judicial transgressions and their consequences, so that it knows that its government actively investigates allegations of judicial misconduct and takes appropriate action when these allegations are proved. Judicial discipline thus protects the public by fostering public confidence in the integrity of a self-policing judicial system."[8] Additionally a judge who voluntarily retires may immediately seek and receive future appointment as a judge or supreme court justice,[9] but "[a] judge removed by the supreme court is ineligible for judicial office for a period of three years."[10] A decision to remove a judge would therefore protect the public by barring reappointment to judicial office for at least three years. Finally, punishing a retired judge's misconduct provides guidance for the judiciary as a whole, highlights the importance of judicial

---

[6] *Id.* at 1234.

[7] *Id.* at 1233 (citing *In re Inquiry Concerning a Judge*, 788 P.2d 716, 722 (Alaska 1990)). "Discipline" also connotes an element of punishment. *See* THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 514 (definition 3) (5th ed. 2011).

[8] *Id.* at 1234.

[9] *See, e.g.*, AS 22.05.070 (establishing mandatory qualifications for supreme court justices); AS 22.07.040 (establishing mandatory qualifications for court of appeals judges); AS 22.10.090 (establishing mandatory qualifications for superior court judges); AS 22.15.160 (establishing mandatory qualifications for district court judges).

[10] AS 22.30.070(d).

ethics, and protects persons interested in employing retired judges by ensuring past misconduct is known to the public.[11]

For these reasons we consider the Commission's recommendation in this case.

## III. COMMISSION PROCEEDINGS

In June 2011 the Commission received a complaint from Deputy Attorney General Richard Svobodny alleging that Judge Cummings had engaged in improper ex parte communications with Bethel Assistant District Attorney Ben Wohlfeil. The Commission's Executive Director investigated the allegation and conducted a telephonic interview with Judge Cummings. After finding probable cause that Judge Cummings had violated his ethical duty, the Commission entered formal charges and held an evidentiary hearing in March 2012.

Wohlfeil testified that on June 1 and 2, 2011, he was alone in a courtroom with Judge Cummings and the in-court clerk. On both days Judge Cummings told him that he should read the court of appeals' memorandum opinions (MO&Js) issued on June 1, 2011, "because they involved matters [he] was currently litigating." After reading the MO&Js, Wohlfeil recognized that two of them supported his position in two cases he was actively litigating before Judge Cummings. Wohlfeil notified his supervisor, filed notices of supplemental authority with the court, and notified opposing counsel that Judge Cummings engaged in ex parte communication in the two cases.

Judge Cummings testified that he had no recollection of a communication with Wohlfeil on June 1, 2011, and that he did not read the MO&Js until June 2. He further testified that on June 2 he told multiple lawyers in his courtroom, including Wohlfeil, interns from the public defenders office, and a lawyer from the Office of Public

---

[11]    *Johnstone*, 2 P.3d at 1233-34.

Advocacy, that they should read the MO&Js from June 1 because they were interesting. He claimed that he had a practice of encouraging attorneys to read MO&Js and that he did not know the MO&Js pertained to cases before him.

In the face of this conflicting testimony the Commission found the following proved by clear and convincing evidence. On June 1, 2011, Judge Cummings initiated an off-the-record communication with Wohlfeil. Judge Cummings suggested that Wohlfeil read the Court of Appeals' June 1 MO&Js because they were relevant to issues Wohlfeil had pending before Judge Cummings. The next day Judge Cummings asked Wohlfeil — again off the record — whether he had read the MO&Js. The in-court clerk was the only other person in the courtroom during these communications.

Wohlfeil read the MO&Js and determined that they supported his position in two cases he was litigating before Judge Cummings. The MO&Js discussed issues Wohlfeil had not briefed in the two cases. Judge Cummings committed judicial misconduct — his ex parte communication was an intentional attempt to affect the outcome of pending litigation.

The American Bar Association's (ABA) Standards for Imposing Lawyer Sanctions provide an analogy "insofar as possible when sanctioning judges."[12] The ABA Standards address four questions to determine misconduct and the appropriate level of sanction.[13]

The first question is "[w]hat ethical duty did the [judge] violate?"[14] The Commission determined that Judge Cummings violated his ethical duty "to the legal system," finding by clear and convincing evidence that Judge Cummings violated Alaska

---

[12] *In re Inquiry Concerning a Judge*, 788 P.2d 716, 723 (Alaska 1990).

[13] *Id.* at 724.

[14] *Id.*

Code of Judicial Conduct, Canons 1, 2A, 3B(5), and 3B(7). The Commission explained that Judge Cummings violated Canon 3B(7)[15] by engaging in "ex parte communication that had the appearance of aiding the prosecution" and "by giving the prosecution relevant case law that may have not been available to the defense." The Commission also explained that the ex parte communication created the appearance of impropriety in violation of Canon 2A,[16] and demonstrated bias in violation of Canon 3B(5).[17] Finally, the Commission explained that Judge Cummings violated Canon 1[18] by failing to "participate in . . . high standards of judicial conduct."

The second question is "[w]hat was the [judge's] mental state?"[19] The Commission found that Judge Cummings's mental state was intentional.

The third question is "[w]hat was the extent of the actual or potential injury caused by the [judge's] misconduct?"[20] The Commission found that the misconduct had potential to injure the defendants in Wohlfeil's cases before Judge Cummings.

---

[15] Canon 3B(7) provides in relevant part: "A judge shall not initiate, permit, or consider ex parte communications or other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding . . . ."

[16] Canon 2A provides in relevant part: "In all activities, a judge shall . . . avoid impropriety and the appearance of impropriety, and act in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

[17] Canon 3B(5) provides in relevant part: "In the performance of judicial duties, a judge shall act without bias or prejudice . . . ."

[18] Canon 1 provides in relevant part: "An independent and honorable judiciary is indispensable to achieving justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of judicial conduct."

[19] *Inquiry Concerning a Judge*, 788 P.2d at 724.

[20] *Id.*

The fourth question is "[a]re there any aggravating or mitigating circumstances?"[21] The Commission found three aggravating circumstances. First, Judge Cummings had a prior disciplinary offense for a similar ex parte communication.[22] Second, Judge Cummings was deceptive during the disciplinary process. Third, Judge Cummings had more than five years on the bench, constituting substantial experience. The Commission did not find any mitigating factors.

The Commission determined that under Section 6.31(b) of the ABA Standards, disbarment is the appropriate sanction when a lawyer makes ex parte communications with the intent to affect the proceeding's outcome. The Commission determined removal is an analogous sanction to disbarment and recommended that we remove Judge Cummings.

## IV. STANDARD OF REVIEW

"The Alaska Supreme Court has the final authority in proceedings related to judicial conduct in Alaska."[23] "In judicial disciplinary proceedings, we conduct a de novo review of both the alleged judicial misconduct and the recommended sanction. In doing so we recognize that judicial misconduct must be established by clear and convincing evidence."[24] Although we have final authority over judicial conduct proceedings and review the evidence de novo, "we give some weight to the

---

[21] *Id.*

[22] *See In re Cummings*, 211 P.3d 1136, 1140 (Alaska 2009) (sanctioning Judge Cummings for improper ex parte communication).

[23] *In re Johnstone*, 2 P.3d 1226, 1234 (Alaska 2000).

[24] *Cummings*, 211 P.3d at 1138.

[C]ommission's factual determinations involving witness credibility, since the [C]ommission is able to hear witnesses testify and can evaluate their demeanor."[25]

## V.    ACCEPTANCE OF THE COMMISSION'S RECOMMENDATION

We have independently reviewed the record. Taking the Commission's credibility determination into account, we accept and agree with the Commission's factual findings by clear and convincing evidence. We conclude that Judge Cummings engaged in improper ex parte communications with Wohlfeil on June 1 and 2, 2011. The ex parte communications were violations of AS 22.30.011(a)(3)(E) and Canons 1, 2A, 3B(5), and 3B(7) of Alaska's Code of Judicial Conduct. Judge Cummings's mental state was intentional and his behavior during the commission disciplinary process was deceptive. His repeated ex parte communications demonstrate bias for the prosecution; we previously sanctioned Judge Cummings for a similar ex parte communication with the prosecution. Judge Cummings harmed the public when violating his ethical duty to the legal system and creating the appearance of impropriety. In light of the foregoing, we conclude that removal is appropriate.

## VI.    ORDER FOR REMOVAL

Judge Cummings is REMOVED as a district court judge for the State of Alaska.

---

[25]    *Johnstone*, 2 P.3d at 1234-35 (citing *Kennick v. Comm'n on Judicial Performance*, 787 P.2d 591, 598 (Cal. 1990)).