In re William ESTELLE, Judge of the District Court, Third Judicial District at Palmer, Alaska.

No. S–15538.

Supreme Court of Alaska.

Sept. 12, 2014.

Before: WINFREE, STOWERS, and MAASSEN, Justices.

### Order

IT IS ORDERED:

The Alaska Commission on Judicial Conduct has filed a Recommendation for Discipline of District Court Judge William Estelle, recommending that he be suspended without pay for 45 days. Following a formal disciplinary hearing, the Commission filed its Findings and Recommendation. The Commission unanimously agreed under a clear and convincing evidence standard that Judge Estelle violated AS 22.30.011(a)(3)(C), (D), and (E), and Canons 1, 2A, 3C(1), and 3B(8) of the Code of Judicial Conduct. These findings were based on several instances where Judge Estelle signed pay affidavits incorrectly stating that he had no matters that were ripe and undecided for more than six months. Judge Estelle's Answer to the Commission's Complaint, as amended by a stipulation substituting an allegation of violation of Canon 3C(1) for Canon 3B(2)(a), admitted that he violated the charged statute and Canons. Judge Estelle has not filed a response to the Commission's Recommendation for Discipline.

The Recommendation adequately sets forth the facts and circumstances of Judge Estelle's violations. It correctly applies the factors under the American Bar Association's Standards for Imposing Lawyer Sanctions, which we have held should be applied to the extent possible when sanctioning judges.[1] These standards are the ethical duty the judge violated; the judge's mental state; the extent of the actual or potential injury caused by the judge's misconduct; and any aggravating or mitigating circumstances. Again, the Commission's Findings and Recommendation discuss each of these factors. Notably, the Commission found both aggravating and mitigating circumstances but importantly did not find that Judge Estelle intentionally falsified his pay affidavits, and because of the mitigating circumstances, concluded that a reduction from the usual baseline suspension of six months was warranted, thus recommending only a 45-day suspension without pay.

■ In a judicial disciplinary proceeding, we conduct a de novo review of both the alleged judicial misconduct and recommended sanction.[2] We conclude from our review of the Commission's Findings and Recommendation that Judge Estelle's misconduct has been established by clear and convincing evidence, particularly in light of his Answer admitting the charged allegations, and that the Commission's legal analysis and recommendation are appropriate. We thus accept the Commission's Recommendation, and adopt its Findings and Recommendation.[3,4]

FABE, Chief Justice, and BOLGER, Justice, not participating.

1. *In re Inquiry Concerning a Judge,* 788 P.2d 716, 723 (Alaska 1990).

2. *In re Cummings,* 211 P.3d 1136, 1138 (Alaska 2009).

3. The Commission's Findings and Recommendation are attached to this order as an appendix.

4. In his partial dissent, Justice Winfree suggests that the court's sanction in *In re Cummings* was too lenient, and thus sets a too-lenient bench-

WINFREE, Justice, dissenting in part.

The Alaska Commission on Judicial Conduct's effort in this case is commendable, and I agree to adopt its findings of fact with respect to Judge Estelle's misconduct. Using the 90-day suspension from *In re Cummings*[1] as a relevant benchmark, I must concede that the 45-day suspension recommended here does not seem inappropriate. The problem I see is not with the Commission's sanctions analysis or its consideration of *In re Cummings,* but rather with *In re Cummings* itself; in retrospect I believe the 90-day sanction imposed in that matter was too lenient. The misconduct in *In re Cummings* warranted the base-line suspension of six months, or at least near it. The misconduct here warrants a suspension of at least three, and probably four, months. I therefore dissent from the court's adoption of the 45-day suspension in this case.

## APPENDIX

### IN THE SUPREME COURT FOR THE STATE OF ALASKA

In re **WILLIAM ESTELLE,**

Judge of the District Court, Third Judicial District at Palmer, Alaska,

Supreme court No. 515538

Alaska Commission of Judicial Conduct

Accusation No. 2013–004

May 6, 2014.

### RECOMMENDATION FOR DISCIPLINE

*Procedures before the Commission*

This matter was brought to the attention of the Alaska Commission on Judicial Conduct ("Commission") in late-March 2013. At its regular meeting on April 26, 2013, the

mark for future cases. We think Justice Winfree's point is valid, but conclude the case before us today is not an appropriate case to address this important issue because only three justices are sitting on the *Estelle* matter, and Justice Winfree's argument deserves to be considered by the full court in an appropriate case raising the issue.

1. 211 P.3d 1136, 1138 (Alaska 2009).

Commission determined that it would hold a Probable Cause Hearing in this matter. A Probable Cause Hearing took place at the Commission's next regular meeting on August 19, 2013. At the conclusion of the Probable Cause Hearing, the Commission issued Formal Charges by unanimous vote. A Formal Disciplinary Hearing pursuant to AS 22.30.011(b) and Alaska Commission on Judicial Conduct Rule 14 took place in Anchorage on April 17th and 18th 2014. The attached Commission Findings and Recommendation is filed 2013. pursuant to Article IV, section 10 of the Constitution of Alaska, AS 22.30.011(d)(2) and Rule 406 of Alaska's Rules of Appellate Procedure.

SUBMITTED by the COMMISSION ON JUDICIAL CONDUCT, through its Executive Director, this 6th day of May 2014.

/s/ Maria N. Greenstein
Maria N. Greenstein (Bar No. 9708048)
Executive Director
Commission on Judicial Conduct.

### RETURN

I served the above order on Special Counsel Matthew Jamin (Bar No. 7410085) and Judge's Counsel James Torgerson (Bar No. 8509120) on the 6th day of May 2014, electronically and by certified mail.

/s/ Jessica Richter
Signature

Administrative Assistant
Title

Jessica Richter
Name

### STATE OF ALASKA

### COMMISSION ON JUDICIAL CONDUCT

In the Matter of the Proceeding Pursuant to AS 22.30.011(a) in Relation to:

WILLIAM ESTELLE,

Judge of the District Court, Third Judicial District at Palmer, Alaska

ACJC File No.: 2013–004

### FINDINGS AND RECOMMENDATION

#### 1. Introduction

The Alaska Commission on Judicial Conduct filed a complaint against District Court Judge William Estelle on August 20, 2013. The Complaint alleged that Judge Estelle engaged in conduct that violates AS 22.30.011(a)(3)(C), (D), and (E), and Canons 1, 2A, 3B(2)(a), and 3B(8) of the Alaska Code of Judicial Conduct. Judge Estelle filed an Answer admitting the allegations in the Complaint except that he denied violating Canon 3B(2)(a). The parties subsequently stipulated to amend the Complaint to substitute Canon 3C(1) for Canon 3B(2)(a) and the Commission accepted the stipulation.

The Commission conducted a formal discipline hearing on April 17 and 18, 2014. Judge Estelle was present and represented by counsel, James E. Torgerson. Special Counsel Matthew D. Jamin represented the Commission. After considering the evidence and arguments of counsel, the Commission unanimously agreed that there is clear and convincing evidence that Judge Estelle violated AS 22.30.011(a)(3)(C), (D), and (E), and Canons 1, 2A, 3C(1), and 3B(8) of the Code of Judicial Conduct.

#### 2. Findings of Fact

The following facts were established by clear and convincing evidence.

On March 28, 2013, Commission staff began an investigation based on a report from a litigant that Judge Estelle had signed a pay affidavit incorrectly averring that he had no matters that were ripe and undecided for more than six months.[1] The next day, Judge Estelle made an informal telephonic self-report to the Commission through counsel. He advised the Commission that he had filed four pay affidavits which he describes as inaccurate in light of the status of *Wasilia*

---

1. A district court judge may not receive a salary disbursement until the judge has filed an affidavit stating that no matter has been undecided by the judge for a period of more than six months. AS 22.15.220.

*Airport Condominium Assoc. v. Twohy*, 3PA–11–01828 CI.

As requested by Commission staff, Judge Estelle subsequently made a written self-report to the Commission dated April 10, 2013. He advised the Commission of two other matters that raised questions of delay and the accuracy of his pay affidavits: *Doroshchuk v. AAA Alaska Insurance Company*, 3PA–11–01393 CI, and *Miles v. Kaatz*, 3PA–09–02228 CI. The *Miles*, *Twohy*, and *Doroshchuk* cases are the only cases that Judge Estelle took more than six months to complete or decide.

In the *Twohy* case, three motions became six-months ripe in January, 2013. In March, 2013, Judge Estelle spoke at length with Judge White about the pending motions, including a motion seeking to disqualify Judge Estelle from the case. They specifically discussed the six month rule, and whether it would apply to the newly assigned judge if Judge Estelle granted the motion seeking his disqualification. Judge Estelle initially denied the motion. But Mr. Twohy sought reconsideration and alleged that Judge Estelle had falsely signed an affidavit claiming he had no matters ripe for decision more than six months. On March 28, 2013, Judge Estelle granted reconsideration and disqualified himself from the case. Judge Estelle determined that his January 15, January 31, February 19, and February 28 affidavits were inaccurate.

The *Miles* trial ended January 26, 2011. Because of post-trial briefing, the case became ripe on March 10, 2011, Judge Estelle did not render the *Miles* decision until March 12, 2012, over a year later.

In the *Doroshchuk* case, there is an issue as to when a group of motions actually became six-months ripe. The Commission agrees with Judge Estelle that the motions are inter-dependent, and therefore became ripe for decision on September 20, 2012, and six-months ripe on March 20, 2013. Judge Estelle decided the motions on March 28, 2013, eight days beyond six months.

Judge Estelle has served as a District Court Judge since 2003. As every judge is required to do, he has signed pay affidavits twice a month. Each of the pay affidavits signed by Judge Estelle states "I, being first duly sworn, state that to the best of my knowledge and belief no matter currently referred to me for opinion or decision has been uncompleted or undecided by me for a period of more than six months." Judge Estelle acknowledged that he must have received training as to the content of pay affidavits and their importance, and that he read the affidavits when he first became a judge. He routinely received and signed the pay affidavits with his leave reports. At some unidentified point in time, he stopped reading the pay affidavits. He testified that he came to believe the pay affidavits were interconnected with the leave reports, and he thought his signature on the affidavits was an affirmance of the substantive data on the leave reports.

Judge Estelle would usually sign the leave report and the affidavit in the presence of his Judicial Assistant. On occasion, however, he would simply sign both documents and leave them in her basket, which did not comply with the requirements for signing an affidavit under AS 09.63.030(a). When he did have matters that were not decided within six months, Judge Estelle filed inaccurate affidavits, and received pay in the ordinary course, contrary to the relevant state statutes.[2]

In the *Miles* matter, during the period that began six months after the *Miles* decision was due, 12 of the pay affidavits Judge Estelle filed (those between September 15, 2011 and February 29, 2012) were inaccurate. In the *Twohy* case, because several motions were more than six months ripe, Judge Estelle did not file the March 15, 2013 pay affidavit until March 29, 2013. But he acknowledged that prior to March 15 he filed four pay affidavits that were inaccurate because of pending motions. As to *Doroshchuk*, the Commission and Judge Estelle

2. Because the Commission concludes that Judge Estelle did not act intentionally when he signed the pay affidavits, it has deliberately chosen to avoid the use of the word "fraudulent" to describe his otherwise misleading affidavits.

agree that the motions were inter-dependent, and therefore did not become six-months ripe until March 20, 2013. Accordingly, Judge Estelle's February 28, 2013 pay affidavit was accurate for purposes of *Doroshchuk*, even though the matter was ripe for more than six months.

Judge Estelle's judicial assistant, Colleen Menard, routinely put in his in-basket matters under advisement (MUA) reports that listed cases he had under advisement for long periods of time. The MUA reports explicitly state when each matter became ripe for decision and the date on which the case was or will have been under advisement for six months. The reports Judge Estelle received reflected the delay in *Twohy* and *Doroshchuk*, but not in the *Miles* case. When a matter was pending for close to or more than six months and listed on the MUA report, Ms. Menard would highlight that matter in pink and place it on Judge Estelle's chair instead of putting it in his in-basket, to draw particular attention to the matter. Judge Estelle knew that each of these cases was old and needed a decision, *i.e.*, potentially pending for more than six months without a decision.

In 2004, the Commission informally admonished Judge Estelle for untimely filing his first report to the Alaska Public Offices Commission (APOC). Judge Estelle was also sanctioned monetarily by the APOC in connection with the late-filed report in 2004. In 2013, Judge Estelle failed to timely file his 2013 APOC report by March 15, 2013, prior to the institution of these proceedings. As a result, he was sanctioned monetarily by the APOC on March 3, 2014.

Judge Estelle has improved his office practices and procedures to prevent similar problems from occurring again, by requiring weekly reports of his cases under advisement to be sent to him automatically by email, by requiring that hard copy reports be provided to him at the same time his leave reports and pay affidavits are submitted to him for signature, by reading the affidavits and executing them according to law, and by involving his Judicial Assistant more aggressively in assisting him with case management. Judge Estelle attended a seminar on Effective Caseflow Management and administrative matters at his own expense during October 2013 for 20 hours at the National Center for State Courts in Virginia.

## 3. Sanction Analysis

The American Bar Association's Standards for Imposing Lawyer Sanctions are applied to the extent possible when sanctioning a judge in Alaska.[3] The ABA Standards address four issues to determine the appropriate level of sanction: (a) the ethical duty the judge violated; (b) the judge's mental state; (c) the extent of the actual or potential injury caused by the judge's misconduct; and (d) any aggravating or mitigating circumstances.[4]

### a. What Ethical Duty did Judge Estelle Violate?

■ Judge Estelle admitted that he violated AS 22.30.011(a)(3)(C), (D), and (E), and Canons 1, 2A, 3C(1), and 3B(8) of the Alaska Code of Judicial Conduct. By failing to decide three matters in a timely manner and by signing pay affidavits when matters had been pending for more than six months, Judge Estelle failed to act in a manner that promotes public confidence in the integrity of the Judiciary (Canons 1 and 2A); failed to maintain professional competence in judicial administration (Canon 3C(1)); and failed to dispose of matters promptly and efficiently (Canon 3B(8)).

### b. What was Judge's Estelle's Mental State ?

With respect to the signing of pay affidavits that incorrectly asserted no matters were pending over six months, Judge Estelle acted recklessly. That is, by not reading the pay affidavits or being certain of what they contained, Judge Estelle was aware of and consciously disregarded a substantial and unjustifiable risk that the affidavits were incor-

**3.** *In re Inquiry Concerning a Judge*, 788 P.2d 716, 723 (Alaska 1990).

**4.** *Id.*

rect; the risk was a gross deviation from the standard of conduct a reasonable person would observe when signing an affidavit.[5] The Commission finds by clear and convincing evidence that Judge Estelle was aware of the six month rule and of the specific language in the affidavit when he signed the affidavits and that he consciously disregarded the risk that he did have matters pending for more than six months when he signed the 16 affidavits at issue. This finding is based on the following facts:

- there was extensive testimony that the six month rule was a matter of common knowledge among attorneys and judges;
- every other witness in the case was well aware of the rule;
- it is very difficult to credit Judge Estelle's testimony that he was unaware of the rule when he was an attorney;
- he was told about the rule and read the affidavit;
- the witnesses agree that while Judge Estelle is not very good at administration, he is very attuned to details;
- Judge Estelle spoke with Judge White about the *Twohy* matter at some length, during which the six month rule came up—had he not known about the rule, one would have expected him to have expressed some surprise when he was told he could not sign the affidavits, yet he did not seem surprised at all, or even say anything about how he was not aware of the rule, focusing instead on whether the rule would apply to another judge, should he recuse himself;
- he received copies of a number of under advisement reports indicating that he had matters pending and undecided close to or more than six months, thereby reminding him that he had to pay attention to the six month deadline; and
- Ms. Menard's testimony indicates that, in January and February 2013, she placed on his chair reminders that would have included the *Twohy* case, yet Judge Estelle signed the affidavits anyway.

The Commission cannot find by clear and convincing evidence that Judge Estelle knew that the affidavits were inaccurate at the time he signed them. The Commission does find that he did not act intentionally.

Judge Estelle admits, and the Commission finds, that he acted negligently with respect to the delay in deciding cases.

**c. What was the Extent of the Actual or Potential Injury caused by Judge Estelle's Misconduct?**

No evidence was presented showing that any of the litigants whose cases were delayed suffered actual injury. But when a decision is delayed unreasonably, there is always potential injury to the litigants. If a litigant had not raised the delay issue with the Commission and with Judge Estelle, it is likely that his conduct would have continued indefinitely, with the potential for further injury.

Judge Estelle's conduct caused actual injury to the public's perception of the integrity of the judiciary. Judges are held to a very high standard, one that is "greater than that expected of lawyers and other persons in society."[6] Judges are expected to be at least as careful as lawyers and others when signing sworn statements.

**d. Are There any Aggravating or Mitigating Circumstances?**

The Commission finds the following aggravating factors:

1. Judge Estelle was appointed to the District Court in 2003, and therefore had substantial experience on the bench at the time these events occurred. ·

2. Judge Estelle has been disciplined previously. In 2004, the Commission informally admonished him for untimely filing his first APOC report. He also failed to timely file his 2013 APOC report by March 15, 2013, prior to the institution of these proceedings.

3. Judge **Estelle committed multiple** offenses. He showed a lack of diligence

**5.** *See* AS 11.81.900(a)(3), defining "recklessly" for purposes of the criminal law.

**6.** *In re Inquiry Concerning a Judge,* 788 P.2d 716, 722 (Alaska 1990).

in three separate matters and signed 16 inaccurate pay affidavits.

The Commission finds the following mitigating factors:

1. Judge Estelle had no dishonest or selfish motive for the matters at issue in this proceeding.

2. Judge Estelle provided full and free disclosure to the Commission and brought a cooperative attitude towards the Commission's proceeding.

3. Judge Estelle has excellent character and an excellent reputation in certain respects. He is precise and thorough in his work and has a good legal mind, but he does not have a good reputation as an administrator.

4. Judge Estelle is remorseful regarding his conduct in this matter.

## 4. Recommendation

The ABA Standards for Imposing Lawyer Sanctions generally require suspension for conduct that is "knowing" and a reprimand for conduct that is "negligent." Relevant here are Standards 4.42 and 4.43 (lack of diligence causing injury or potential injury to a client); Standards 5.22 and 5.23 (failure of a public official to follow proper procedures or rules, causing injury or potential injury to a party or the integrity of the legal process); and Standards 6.12 and 6.13 (false statements causing injury or potential injury to a party, or an adverse or potentially adverse effect on a legal proceeding).

The difficulty in applying these standards in this case is the fact that the Commission finds Judge Estelle's signing of inaccurate pay affidavits to be reckless, a mental state somewhere between knowing and negligent. Because Judge Estelle's conduct was significantly more egregious than mere negligence, suspension is appropriate. If a practicing lawyer were to engage in similar conduct, the Commission believes a comparable sanction would be imposed.

When suspension of a judge is indicated, the baseline period of suspension is six months.[7] Whether there should be a departure from the baseline depends upon "the harm to the administration of justice and the presence of aggravating or mitigating factors."[8] In *Cummings,* the court reduced the period of suspension to three months based on the following factors: (1) although the judge's violations were significant and potentially harmful to the administration of justice, the actual harm was minimal; and (2) the court found three mitigating factors and only one aggravating factor.[9] With respect to the mental state in *Cummings,* the court accepted the Commission's findings that the judge acted intentionally when he passed a note to a witness, but negligently in other respects.

In this case, there was potential harm to litigants, but no evidence of actual harm beyond the fact that cases were delayed. The actual harm to the administration of justice is difficult to measure, but the Commission believes there has been significant harm. A member of the public who is aware of Judge Estelle's violations is likely to question how any judge can hold lawyers, litigants, and witnesses to the high standard of responsibility imposed when a sworn statement is made. There is a public expectation that individuals who frequently appear before the court, such as attorneys, process servers, and police officers, will be diligent when completing routine affidavits. Witnesses, litigants, and other members of the public are held to a high standard by the court when completing affidavits. Indeed, what some individuals see as unintentional and merely inaccurate statements may nonetheless lead to prosecution for civil or criminal fraud. Confidence in the administration of justice is eroded if judges are seen to be held to a lower standard of responsibility when completing a sworn statement, especially when financial compensation is at stake.

The aggravating factors in this case weigh in favor of imposing a suspension rather than a reprimand. But because the Commission does not find by clear and convincing evi-

---

7. *In re Cummings,* 211 P.3d 1136, 1140 (Alaska 2009).

8. *Id.*

9. *Id.*

dence that Judge Estelle intentionally falsified his pay affidavits, and because there are mitigating factors, a reduction from the baseline suspension of six months is appropriate.

Based on the foregoing, the Commission unanimously recommends that Judge Estelle be sanctioned by a suspension without pay for 45 days.

Dated this 1 day of May, 2014.

/s/ <u>Keith B. Levy</u>
Keith B. Levy
Chairperson
Alaska Commission on Judicial Conduct