**In the Disciplinary Matter Involving
Eugene B. CYRUS, Respondent.**

No. S–13694.

Supreme Court of Alaska.

Nov. 5, 2010.

Louise R. Driscoll, Assistant Bar Counsel, Stephen J. Van Goor, Bar Counsel, Anchorage, for Alaska Bar Association.

Eugene B. Cyrus, pro se, Chugiak.

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

*OPINION*

WINFREE, Justice.

## I. INTRODUCTION

Eugene B. Cyrus, an attorney presently on interim suspension, challenges sanctions recommended by the Disciplinary Board of the Alaska Bar Association. The recommended sanctions include: (1) suspending Cyrus from the practice of law for five years, with two of those years stayed; and (2) following the three years of served suspension, three years of probation with attendant conditions, including that Cyrus practice law solely as an employee of an agency or firm. Cyrus agrees that a suspension followed by a probationary period is an appropriate sanction, limiting his argument to a request that an additional year of the suspension be stayed so that he may practice in pro bono matters under the supervision of a law firm or agency.

## II. FACTS AND PROCEEDINGS

On April 3, 2006, we suspended Cyrus from the practice of law for six months, effective May 3, 2006, and publicly censured him for professional misconduct based on five complaints similar to those underlying this case.[1] We reinstated Cyrus's license to practice law on March 23, 2007.[2] This case arose from six complaints the Bar received from six state district court judges regarding problems each experienced in dealing with Cyrus in court proceedings between March and December of 2008. Bar Counsel opened the six complaints for investigation and sent separate letters notifying Cyrus of his duty to respond. Cyrus did not respond to any of these letters. Pursuant to Alaska Bar Rules 15(a)(4) and 22(a), Cyrus's failures to respond

were grounds for discipline and served as admissions to the allegations contained in the complaints.

In December 2008 the Bar requested that we place Cyrus on interim suspension pursuant to Bar Rule 26(e) pending resolution of the complaints. On January 28, 2009, we placed Cyrus on interim suspension, but stayed that order with respect to a trial that Cyrus was then concluding.[3] On February 3, 2009, we modified that order to allow Cyrus to close or transfer open files, making the interim suspension effective March 5, 2009.[4]

On February 19, 2009, the Bar initiated a petition for a formal hearing on the complaints against Cyrus, alleging that Cyrus had violated the Alaska Rules of Professional Conduct and Alaska Bar Rules relating to: (1) competent representation of clients;[5] (2) failure to act with "reasonable diligence and promptness" in his representation of clients;[6] (3) failure to communicate with clients;[7] (4) failure to make "reasonable efforts to expedite litigation" consistent with the interests of his clients;[8] and (5) failure to answer disciplinary charges.[9] On March 12, 2009, Cyrus responded to the petition.

During an April 2009 pre-hearing conference before the Area Hearing Committee selected to hear the matter, Cyrus admitted to almost all of the misconduct alleged in the petition and waived the liability phase of proceedings.[10] The Committee convened a sanctions hearing in June 2009. During this hearing Cyrus admitted that the allegations of the complaints were accurate, his actions "jeopardized [the] interest[s]" of his clients, and he could not realistically run his own practice. Cyrus suggested that he be allowed to practice under the supervision of a firm or agency capable of managing his case-

---

1. Alaska Supreme Court Order No. S–12247 (Apr. 3, 2006).

2. Alaska Supreme Court Order No. S–12590 (Mar. 23, 2007).

3. Alaska Supreme Court Order No. S–13372 (Jan. 28, 2009).

4. Alaska Supreme Court Order No. S–13372 (Feb. 3, 2009).

5. Alaska R. Prof. Conduct 1.1.

6. Alaska R. Prof. Conduct 1.3.

7. Alaska R. Prof. Conduct 1.4.

8. Alaska R. Prof. Conduct 3.2.

9. Alaska Bar R. 15(a).

10. Cyrus disputed an allegation relating to his conduct in one of the six matters and Bar Counsel agreed to remove the allegation from the petition.

load, explaining that "a probationary period, with the right terms, that would have an office manager, is probably the ... the right way to go ... so I can use the skills that I have to help somebody."

In August 2009 the Committee issued its findings and conclusions, ultimately recommending to the Disciplinary Board that (1) Cyrus be suspended from the practice of law for three years with six months stayed, and (2) Cyrus's reinstatement be conditioned on proof of his employment with an agency or law firm that can adequately supervise his practice and control his caseload. The Committee stated:

> This sanction is consistent with discipline that has been imposed for similar misconduct. *See, e.g., In re Beconovich,* Alaska Supreme Court Order Nos. S–5780/7110 (March 14, 1996) (three year suspension with sixteen months stayed for neglect, failure to communicate and failure to respond to disciplinary charges in four cases); *In re Cavanaugh,* Alaska Supreme Court Order No. S–7504 (Feb. 15, 1996) (three year suspension for neglect, failure to communicate and failure to respond to disciplinary charges in four cases).

On September 17, 2009, the Disciplinary Board held a hearing to consider the Committee's recommendation. During this hearing, Cyrus reiterated that he did not dispute the allegations of the complaints and rearticulated his request to be placed on supervised probation: "[M]y proposal is ... that if I'm fortunate to find somebody that will supervise my practice and caseload, that I should be allowed to be on probation.... I would like three years with more time suspended on the condition that I work for somebody."

In a September 17, 2009 written decision, the Board adopted the Committee's findings and conclusions but not the Committee's recommended sanctions. The Board instead recommended to us the following disciplinary sanctions: (1) suspension from the practice of law for five years, with two of those years stayed; and (2) following the three years of served suspension, three years of probation, during which Cyrus must practice law solely as an employee of an agency or firm, commit no further disciplinary violations, pay all fines and sanctions, obtain annual certification of employment from his employer, and notify the Bar Association within ten days of any change in his employment status.

The Bar served Cyrus with the Board's decision on November 12, 2009, and on November 16, 2009, filed the Board's findings, conclusions, and recommendations with this court. Although Cyrus did not perfect an appeal under Bar Rule 22(p),[11] he submitted briefing challenging the Board's recommended discipline in one limited aspect. Cyrus initially argued that he should be allowed to engage in pro bono work under the supervision of an attorney or agency during the future portion of his unstayed suspension. He later modified his request to cover only the last year of his three-year unstayed suspension.

## III. STANDARD OF REVIEW

We review decisions of the Disciplinary Board pursuant to Alaska Bar Rule 22(r).[12] We independently review the entire record in attorney disciplinary proceedings, though findings of fact made by the Board are entitled to great weight.[13] "We apply our independent judgment to questions of law and questions concerning the appropriateness of sanctions."[14] We examine each case individually, "guided but not constrained by the American Bar Association's Standards for Imposing Lawyer Sanctions and by the

11. Either Bar Counsel or a respondent may appeal a disciplinary recommendation by the Board by filing a notice of appeal in our court within ten days of service of the decision. Alaska Bar R. 22(p). In the absence of an appeal, we will not impose discipline different from the Board's recommendation without giving the parties notice and an opportunity to be heard. Alaska Bar R. 22(r).

12. Bar Rule 22(r); *In re Brion,* 212 P.3d 748, 751 (Alaska 2009).

13. *In re West,* 805 P.2d 351, 353 n. 3 (Alaska 1991) (citing *In re Simpson,* 645 P.2d 1223, 1226–28 (Alaska 1982)).

14. *In re Hanlon,* 110 P.3d 937, 941 (Alaska 2005) (citing *In re Friedman,* 23 P.3d 620, 625 (Alaska 2001)).

sanctions imposed in comparable disciplinary proceedings." [15]

■ In imposing attorney sanctions, we undertake a three-step analysis. We first address: (1) the duty violated; (2) the lawyer's mental state; and (3) the extent of the actual or potential injury.[16] We next examine recommended sanctions under the ABA Standards for misconduct found in the first step.[17] We then determine how aggravating or mitigating factors affect the recommended sanctions.[18]

## IV. DISCUSSION

### A. Overview

Cyrus does not dispute the Committee's factual findings, the Board's adoption of those factual findings, the Committee's sanction analysis, or the Board's adoption of that analysis. Cyrus concedes that a 30–to 36–month suspension is "certainly reasonable for a 'second offender' mismanaging his office practice," does not argue that the Board's recommendation of a five-year suspension with two years stayed is inappropriate, and does not oppose the Board's recommendation for a three-year probation term with related conditions of practice. Cyrus requests only that we add a "special condition" allowing him, during the third year of his unstayed suspension period, to practice law under the supervision of a law firm or agency serving the poor or disadvantaged. The Bar opposes Cyrus's proposed modification of the Board's recommended sanction. Therefore, following our independent review of the record, we must answer two intertwined questions prior to our imposition of sanctions: (1) are the sanctions recommended by the Board appropriate, and (2) should we grant Cyrus's request to practice under special conditions during the third year of unstayed suspension?

### B. Appropriateness Of The Recommended Sanctions

#### 1. The ethical duties violated, Cyrus's mental state, and the injury or potential injury caused

■ Cyrus does not contest the factual findings reached by the Committee and adopted by the Board, and we accept them. Our consideration of the initial stage of the ABA analysis is thereby considerably simplified.

As to the first prong, the ethical duties violated, the Committee found that: Cyrus had violated duties owed (1) to his clients by (a) failing to communicate with them, (b) failing to appear at hearings, and (c) failing to file pleadings; and (2) to the legal system by (a) causing unnecessary delay in court proceedings, and (b) failing to respond to disciplinary charges. Cyrus acknowledges and admits that he violated these ethical duties.

The second prong, Cyrus's mental state, is easily ascertained: Cyrus admits that in light of his prior disciplinary suspension for similar misconduct, he saw these new violations coming and acted with the culpable mental state of "knowingly."

The third prong, the injury or potential injury caused, is also readily apparent. Cyrus's neglect and failure to communicate resulted in delay and postponement of resolution of his clients' cases. Cyrus acknowledges this resulted in at least potential harm to his clients.

In sum, the uncontested facts show that Cyrus knowingly violated ethical duties to his clients and the legal system, which caused at least the potential for injury to his clients.

#### 2. ABA-recommended sanctions for Cyrus's misconduct

Our next step is to look to the ABA Standards to discern what sanctions are recommended for the type of misconduct found in our initial inquiry.[19] The ABA Standards

**15.** *In re Friedman,* 23 P.3d at 625 (citing *In re Frost,* 863 P.2d 843, 844 (Alaska 1993)).

**16.** *In re Hanlon,* 110 P.3d at 941–42.

**17.** *Id.* at 942.

**18.** *Id.*

**19.** *Id.* at 942.

state that suspension is generally appropriate when a lawyer causes injury or potential injury to a client by knowingly failing to perform services for a client or engaging in a pattern of neglect.[20] Suspension also is generally appropriate when a lawyer causes interference or potential interference with a legal proceeding by knowingly violating a court order or rule.[21] The Standards suggest such a suspension last from six months to three years before the lawyer may apply for reinstatement.[22] But the Standards further state that "[d]isbarment is generally appropriate when a lawyer ... has been suspended for the same or similar misconduct, and intentionally or knowingly engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession."[23]

### 3. Aggravating and mitigating factors

The final step in our analysis is to determine whether aggravating or mitigating factors should affect the sanction recommended by the ABA Standards.[24] We agree with the Committee's finding, adopted by the Board, that four aggravating factors under ABA Standard 9.2 apply: (1) prior disciplinary offenses; (2) a pattern of misconduct; (3) multiple offenses; and (4) substantial experience in the practice of law. We also agree with the Committee's finding, adopted by the Board, that one mitigating factor under ABA Standard 9.3 applies: Cyrus did not have a dishonest or selfish motive; rather, his conduct stemmed from taking on more work, much of it pro bono in nature, than he could handle in an attempt to help as many clients as possible.

### 4. Recommended sanctions

When the Board issued its findings, conclusions, and recommendations, it adopted the Committee's findings and conclusions but rejected without explanation the Committee's recommended sanctions that (1) Cyrus be suspended from the practice of law for three years with six months stayed, and (2) Cyrus's reinstatement be conditioned on proof of his employment with an agency or law firm that can adequately supervise his practice and control his caseload. Instead, the Board recommended more severe sanctions: (1) suspending Cyrus from the practice of law for five years, with two of those years stayed; and (2) following the three years of served suspension, three years of probation, during which Cyrus must practice law solely as an employee of an agency or firm, commit no further disciplinary violations, pay all fines and sanctions, obtain annual certification of employment from his employer, and notify the Bar Association within ten days of any change in his employment status.[25]

The Board's recommended sanctions are appropriate. While each individual incident of misconduct might not have been particularly egregious, Cyrus's pattern of neglecting his clients and delaying court matters, after previous discipline for the same conduct, is disconcerting. We agree with Bar Counsel that Cyrus's absence of a dishonest or selfish motive for his misconduct appropriately mitigates the sanction from disbarment to suspension. But Cyrus admits that controlling his calendar is a weakness he cannot overcome and states, "unless somebody controls my caseload, I'd probably go down the same way [in the future]." Thus, a lengthy disciplinary suspension and subsequent probation

---

**20.** Standards for Imposing Lawyer Sanctions § 4.42 (ABA 1992).

**21.** *Id.* at § 6.22. *See also In re Hanlon,* 110 P.3d at 942.

**22.** Standards for Imposing Lawyer Sanctions at § 2.3.

**23.** *Id.* at § 8.1.

**24.** *In re Hanlon,* 110 P.3d at 942.

**25.** The Board is not required to explain why it chooses to reject disciplinary sanctions recommended by an Area Hearing Committee, but we note that such an explanation generally will assist us in our review of the Board's own recommendation. Here we can determine from the transcript of the hearing before the Board that it was rightfully concerned with the Committee's recommendation to impose conditions of practice outside the context of probation. Because Cyrus does not challenge the terms of the Board's probation recommendation, we do not need to examine the parameters of probation authorized by Bar Rule 16(a)(3) at this time.

is warranted to protect the public, the courts, and the legal profession.[26]

## C. Cyrus's Request For Conditional Suspension To Allow Him To Provide Pro Bono Legal Services

Cyrus acknowledges that he has "problems [with] office management [ ] resulting in risk to clients of their cases not be[ing] properly handled," but contends that "the cause of the problem can be cured by a supervised caseload...." He therefore requests that he be allowed to practice law under the supervision of a law firm or agency serving the poor or disadvantaged during the final year of his three-year suspension. Cyrus analogizes his proposal to the Emeritus Attorney program described in Alaska Bar Rule 43.2.[27]

■ While Cyrus's commitment to helping those unable to afford legal services is commendable, "[o]ur paramount concern, here as always, must be the protection of the public, the courts, and the legal profession." [28] When the Bar began receiving the judicial complaints forming the basis of this disciplinary matter, little more than one year had passed since Cyrus's reinstatement following his 2006 suspension for similar misconduct. Clients who are unable to afford counsel

should not be subject to a lesser standard of legal representation from a lawyer who fails to comply with the rules of professional conduct. Given Cyrus's repeated neglect of client matters, his failure to timely appear at court proceedings, and his admission that he is unable to manage his calendar, we cannot ignore the risk of continued misconduct and harm to future clients posed by permitting Cyrus to practice. We therefore reject Cyrus's request that an additional year of suspension be stayed so that he may practice in pro bono matters under the supervision of a law firm or agency.

## V. CONCLUSION

We IMPOSE the sanctions recommended by the Alaska Bar Association Disciplinary Board, with Cyrus's suspension applied retroactively to the date of his interim suspension in March 2009.

26. In addition to the cases cited by the Area Hearing Committee, *see In re Brion*, 212 P.3d 748, 750–53 (Alaska 2009) (imposing three-year suspension with two years stayed for multiple instances of neglect and failure to communicate and comparing discipline with other cases).

27. Under this Rule, an inactive or retired member of the Alaska Bar Association who is not otherwise engaged in the practice of law may provide free civil legal services under the supervision of a qualified legal services provider. Bar Rule 43.2 provides in part that:

A member who wishes to perform pro bono work as an emeritus attorney on behalf of a qualified legal services provider shall file a sworn statement with the Alaska Bar Association that states:

....

(5) that the emeritus attorney has not been publicly disciplined within the last fifteen (15) years in any jurisdiction.

28. *In re Buckalew*, 731 P.2d 48, 56 (Alaska 1986).