*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| In the Disciplinary Matter Involving | ) | |
| | ) | Supreme Court Nos. S-15945/15961 |
| MICHAEL A. STEPOVICH, | ) | ABA File No. 2011D206 |
| | ) | |
| Respondent. | ) | O P I N I O N |
| | ) | |
| | ) | No. 7139 – December 16, 2016 |

Appeal from the Alaska Bar Association Disciplinary Board.

Appearances: J. John Franich, Franich Law Office, LLC, Fairbanks, for Respondent. Louise R. Driscoll, Assistant Bar Counsel, Anchorage, for the Alaska Bar Association.

Before: Stowers, Chief Justice, Fabe, Maassen, and Bolger, Justices.

MAASSEN, Justice.

## I. INTRODUCTION

A few months after reinstatement to the Alaska Bar from a two-year suspension, an attorney violated Alaska Rule of Professional Conduct 1.8(c) by drafting a friend's will that named him as the contingent beneficiary. The friend died leaving a considerable estate, but the attorney inherited nothing.

The Bar brought a disciplinary action against the attorney and stipulated that his violation of Rule 1.8(c) was negligent, punishable by public censure. The Bar's Disciplinary Board, however, found that sanction too lenient in light of the attorney's prior disciplinary record. The Board recommended that we impose a six-month

suspension from practice; it also noted that the misconduct at issue occurred during a year of stayed suspension that had been imposed as part of the earlier discipline.

We conclude that the attorney acted not negligently but knowingly, and after considering relevant aggravating and mitigating factors we impose a 12-month suspension. But because the violation is not the same as or similar to the misconduct for which the attorney was suspended before, we do not also impose the stayed year.

## II.    FACTS AND PROCEEDINGS

The underlying facts are undisputed; the only issue on appeal is the appropriate sanction for the attorney's violation of Rule 1.8(c).

### A.    Facts

Michael Stepovich and a client had been friends for several decades, and when the client was diagnosed with cancer he asked Stepovich to draft his will. Although probate is outside Stepovich's normal practice areas, he had helped other friends with "very simple" wills, and he agreed to help the client because of their friendship.[1] Stepovich knew that the client "was in bad shape," though the client kept the specifics of his illness to himself.

Stepovich drafted the will in May 2009. The client had acquired "an estate with assets of more than $800,000" through his work and his real-estate holdings. He was married but had no children. His mother was still living, and he also had a brother and sister with whom he had "problems." In his will he left each of his siblings their choice of six shot glasses from his collection; he left his mother nothing because she was "taken care of" as the beneficiary on a six-figure bank account she would receive outside of probate; and he left the remainder of his estate to his wife. The will named the client's

---

[1]    Stepovich testified that his practice was "80 percent criminal practice, and then 20 percent . . . personal injury."

"good friend, Michael Stepovich," as the sole contingent beneficiary.[2] According to Stepovich, the client convinced him to be the contingent beneficiary even though Stepovich resisted, advising the client to choose someone else and saying that if by chance he inherited he would just give the money away.

Stepovich had helped the client with other legal matters such as landlord-tenant issues, and he had helped the client's wife dissolve a prior marriage. He never charged the client or his estate for any of his professional services.

The client died about six weeks after signing his will. Because his wife survived, the contingent beneficiary, Stepovich, received nothing. Probate proceedings were nonetheless contentious, as the client's mother contested the will. Eventually she and the client's wife successfully petitioned to remove Stepovich as the personal representative of the estate. The court enforced a settlement agreement in 2012, ending the probate proceedings.

## B.  Proceedings

The Alaska Bar Association filed a petition for formal hearing in December 2013, alleging that Stepovich had violated the conflict of interest provision, Alaska Rule of Professional Conduct 1.8, "when he prepared [the client's] [w]ill and named himself the sole contingent beneficiary who could potentially inherit a substantial estate."[3] In July 2014 Bar Counsel and Stepovich entered a Stipulation for Discipline by Consent, agreeing that he violated Rule 1.8(c) and did so negligently. The recommended sanction

---

[2]    A contingent beneficiary is one "designated by the testator to receive a gift if the primary beneficiary is unable or unwilling to take the gift." *Beneficiary*, BLACK'S LAW DICTIONARY (10th ed. 2014).

[3]    The record does not indicate how the matter came to the Bar's attention.

for such a violation, according to the American Bar Association's Standards for Imposing Lawyer Sanctions (the ABA Standards), is public censure.[4]

Stepovich had been disciplined before; during his 32 years of practice leading up to the matter at issue here he received sanctions for three separate incidents of misconduct. On December 22, 2008, about six months before he drafted the client's will, he had been reinstated to active status following a three-year suspension of his license with one year stayed.[5] In that matter, the Disciplinary Board[6] concluded that Stepovich violated Alaska Rule of Professional Conduct 1.15(a) and (b) by knowingly misappropriating client funds, a violation the Board believed "was more extensive and more longstanding than the stipulation [for discipline] made clear."

Bar Counsel presented the parties' stipulation in the present matter to the Disciplinary Board in September 2014, but the Board rejected it. The Board "determined that, given the . . . previous misconduct, and the nature of the misconduct in this case, . . . the proposed discipline [of public censure] is too lenient. Of particular concern to the [B]oard [was] the degree to which the mental state in this matter involved negligence versus knowledge."

---

[4]   STANDARDS FOR IMPOSING LAWYER SANCTIONS § 4.33 (AM. BAR ASS'N 2015). The ABA Standards use the term "reprimand" interchangeably with "public censure." *Id.* § 2.5.

[5]   *See In re Stepovich*, 143 P.3d 963, 963-64 (Alaska 2006). The stayed year was to be imposed if Stepovich "engaged in the same or similar misconduct" during the year following his reinstatement. *Id.* at 964.

[6]   *See* Alaska Bar R. 10(a) ("The Board of Governors of the Bar, when meeting to consider grievance and disability matters, [is] known as the Disciplinary Board of the Alaska Bar Association.").

The matter was referred to an Area Hearing Committee (Committee) for development of the record.[7] The Committee heard testimony on the sanction in January 2015 and issued written findings and conclusions. It found Stepovich grossly negligent, a mental state it acknowledged is not found in the ABA Standards; the Committee explained that "[n]aming one[self] as a contingent devisee in a client's will is an obvious conflict of interest that should have been recognized as a problem even absent specific knowledge of Rule 1.8(c)." But the Committee concluded that Stepovich's stayed year of suspension from the earlier discipline matter should not be imposed, reasoning that the "same or similar" conduct that would trigger its imposition referred only to new trust fund violations. The Committee recommended that Stepovich be publicly censured.

The Disciplinary Board conducted another hearing and again found public censure too lenient; it concluded that the appropriate sanction was a six-month suspension. The Board chair, Geoffrey Wildridge, explained on the record that the Board agreed with the Committee's "determination that negligence was the appropriate mental state" and "that it was actually gross negligence in this case, to be more specific." Wildridge further explained that the Board disagreed with the Committee's decision "that the conduct in this matter was not the same [as] or similar [to] the conduct that got [Stepovich] in trouble the last time around." But in the Board's view the fact Stepovich was "on probation for a prior transgression, a prior ethical violation[,] when this took place" was "an aggravating factor," and the Board "direct[ed] Bar counsel to alert the Supreme Court to the fact that this transgression occurred during that one-year suspension."

---

[7] Hearing Committees consisting of three members are appointed under Alaska Bar Rule 12 to conduct evidentiary hearings in discipline matters and make recommendations to the Disciplinary Board.

The Board's written Decision and Recommendation, signed by the new Board president approximately a month later, differed somewhat from the decision announced orally. First, the written decision noted the Committee's determination that Stepovich's conduct had been "grossly negligent" but did not expressly agree with it, as the Board had orally. Second, the written decision noted the Committee's determination that the conduct at issue was not the "same [as] or similar to" that of Stepovich's earlier violation but did not expressly disagree with it, as the Board had orally. Instead, the written decision stated that "whether or not Mr. Stepovich's violation of [Rule] 1.8(c) is viewed as involving conduct which is the 'same or similar' to his prior trust fund violation," it was "an aggravating factor which must be afforded significant weight," particularly because the new "violation occurred while the sanction for the prior violation was still in force."[8] The decision recommended that this court impose a six-month suspension from practice.

Stepovich appeals the Board's decision.[9] He argues that the proper sanction is "a public reprimand" — "the sanction to which the parties stipulated and the sanction that was recommended by the area hearing committee." The brief submitted by Bar Counsel also does not support the Board's decision. It surveys the controlling ABA

---

[8]    The differences between the Board's oral and written decisions are not critical to our opinion today but are unexplained and therefore concerning. *See, e.g.*, *Ogden v. Ogden*, 39 P.3d 513, 518 (Alaska 2001) ("[A] trial court abuses its discretion when it adopts, without explanation or change, proposed findings of fact and conclusions of law that substantially deviate from the court's earlier oral decision."); *cf. McDougall v. Lumpkin*, 11 P.3d 990, 998 (Alaska 2000) ("Counsel agreeing to draft written findings and conclusions for the superior court is essentially a scribe who must accurately memorialize the court's oral findings and conclusions.").

[9]    *See* Alaska Bar Rule 25(g) (providing that an attorney "may appeal from a recommendation or order of the Board" in a disciplinary matter).

Standards before concluding that it is up to the court to determine whether Stepovich's conduct "warrants a public censure which will not limit [his] right to practice or a disciplinary suspension for a period of time to be determined by the [c]ourt." Bar Counsel cautions that "[a]ny period of suspension should not be regarded as insubstantial in these circumstances" and strongly implies that any suspension longer than 90 days is unwarranted.[10]

## III. STANDARD OF REVIEW

The Alaska Bar Rules govern our review of Disciplinary Board decisions.[11] "We review the evidence and the factual findings of the Area Hearing [Committee] independently but give deference to findings made by the Disciplinary Board."[12] In determining the appropriate sanctions, we apply our independent judgment.[13] And we exercise that independent judgment to "determine sanctions on a case-by-case basis, guided but not constrained by the American Bar Association's Standards for Imposing

---

[10] We note our serious concern that Bar Counsel's brief departs from the Board's decision in several respects, depriving the court of a zealous advocate for the Board's position. *See* Alaska R. Prof. Conduct pmbl. ("As advocate, a lawyer zealously asserts the client's position under the rules of the adversary system.").

[11] *See In re Brion*, 212 P.3d 748, 751 (Alaska 2009) (citing Alaska Bar R. 22(r)).

[12] *Id.*; *see also In re Rice*, 260 P.3d 1020, 1027 (Alaska 2011) ("Though [we have] the authority, if not the obligation, to independently review the entire record in disciplinary proceedings, findings of fact made by the Board are nonetheless entitled to great weight." (quoting *In re West*, 805 P.2d 351, 353 n.3 (Alaska 1991))).

[13] *In re Rice*, 260 P.3d at 1027; *In re Brion*, 212 P.3d at 751.

Lawyer Sanctions and by the sanctions imposed in comparable disciplinary proceedings."[14]

## IV. DISCUSSION

### A. A Suspension Longer Than Six Months Is Appropriate.

We use "a three-step analysis" when determining sanctions in attorney discipline cases.[15] The first step requires us to address "(1) the duty violated; (2) the lawyer's mental state; and (3) the extent of the actual or potential injury."[16] In the second step we "examine recommended sanctions under the ABA standards for misconduct found in the first step."[17] In the third step we "determine how aggravating or mitigating factors affect the recommended sanctions."[18]

#### 1. The ABA Standards for Imposing Lawyer Sanctions support a suspension longer than six months.

##### a. Duty

The relevant language of Rule 1.8(c) is flatly prohibitive: "A lawyer shall not . . . prepare on behalf of a client an instrument giving the lawyer or a person related to the lawyer any substantial gift unless the lawyer or other recipient of the gift is related

---

[14] *In re Friedman*, 23 P.3d 620, 625 (Alaska 2001) (first citing *In re Mann*, 853 P.2d 1115, 1116 (Alaska 1993); then citing *In re Frost*, 863 P.2d 843, 844-45, 854 (Alaska 1993)).

[15] *In re Cyrus*, 241 P.3d 890, 893 (Alaska 2010) (citing *In re Hanlon*, 110 P.3d 937, 941-42) (Alaska 2005)); STANDARDS FOR IMPOSING LAWYER SANCTIONS § 3.0 (AM. BAR ASS'N 2015).

[16] *In re Cyrus*, 241 P.3d at 893 (citing *In re Hanlon*, 110 P.3d at 941-42).

[17] *Id.*

[18] *Id.*

to the client."[19]  Stepovich does not dispute that he violated the rule.

### b.  Mental state

Stepovich and Bar Counsel originally stipulated that the violation was negligent, and the Committee agreed.  But the Committee qualified its finding:

> If "gross negligence" were a mental state under the [ABA] Standards, the Committee would characterize [Stepovich's] knowledge as gross negligence.  Naming one[self] as a contingent devisee in a client's will is an obvious conflict of interest that should have been recognized as a problem even absent specific knowledge of Rule 1.8(c).

As noted above, the Board expressly agreed with the "gross negligence" aspect of this characterization in its oral decision but did not say so in the later written version; it did, however, expressly concur with the Committee's finding of negligence.

The severity of the sanction depends in part on whether the conduct was negligent, knowing, or intentional.[20]  The ABA Standards define negligence as "the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will

---

[19]      The rule further provides:  "For purposes of this paragraph, related persons include a spouse, child, grandchild, parent, grandparent, or other relative or individual with whom the lawyer or the client maintains a close familial or domestic relationship." Alaska R. Prof. Conduct 1.8(c).

[20]      We find it unnecessary to discuss intentional misconduct.  Although Stepovich intended to draft the will naming himself as contingent beneficiary, his conduct was not intentional for purposes of the ABA Standards.  The ABA Standards define intent as "the conscious objective or purpose to accomplish a particular result." STANDARDS FOR IMPOSING LAWYER SANCTIONS: DEFINITIONS (AM. BAR ASS'N 2015). The ABA Standards' conflict of interest section repeatedly defines the relevant intent as "the intent to benefit the lawyer or another"; that is, the "particular result" the lawyer intends to accomplish must be self-benefit.  *Id.* § 4.3.  As discussed later in this opinion, we do not disturb the Committee's finding that Stepovich had no selfish or dishonest motive; he did not intend to benefit himself "or another" other than his client. *See infra* section IV.A.1.e.iv.

follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation."[21] The ABA Standards define knowledge as "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result."[22] ABA Standards § 4.33 states that a "[r]eprimand is generally appropriate when a lawyer is negligent in determining whether the representation of a client may be materially affected by the lawyer's own interests," whereas § 4.32 states that "[s]uspension is generally appropriate when the lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict."

Thus, to determine whether Stepovich's conduct was negligent or knowing, we must consider whether he had knowledge of the nature of his conduct and whether he knew his conduct created a conflict of interest. Stepovich argued before the Committee that he "should have known, [but he] didn't know." But the Committee appropriately characterized the circumstances as presenting an "obvious conflict of interest,"[23] and Stepovich's own testimony is conflicting. After testifying that he "didn't

---

[21] STANDARDS FOR IMPOSING LAWYER SANCTIONS: DEFINITIONS (AM. BAR ASS'N 2015).

[22] *Id.*

[23] *See In re Miles*, 339 P.3d 1009, 1019 (Alaska 2014) (disbarring an attorney who knowingly misappropriated client funds in part because she "failed to recognize a single one of the numerous signals that" her conduct was wrongful); *Neb. State Bar Ass'n v. Zakrzewski*, 560 N.W.2d 150, 156 (Neb. 1997) (holding that for attorney discipline "knowingly" includes "conduct that is so carelessly and recklessly negligent as to lead only to the conclusion that it was done knowingly").

Stepovich argued that the violation "was not obvious to the lawyer that [he] hired to assist him in probating the estate" because that lawyer never mentioned it. This argument is unpersuasive, as the evidence shows only that the other attorney did not say

(continued...)

know" about the conflict, he went on to say, "The chances of it ever getting that far I didn't even see that" — seemingly recognizing that there could be a problem if "it ever [got] that far." Stepovich also testified that he counseled his client against naming him as beneficiary and told the client he could have another attorney advise him — sound advice that also appears to recognize a conflict.[24]

Ultimately, there is no question that Stepovich knew that the will he drafted, in his capacity as a lawyer, identified himself as the contingent beneficiary. And we agree with the Committee that the conflict created by this knowing conduct was "obvious." Stepovich's counsel argued before the Committee that Rule 1.8(c) "should have been a rule that he was conscious of, aware of, and avoided, but he actually was not, and that is negligence." In determining the appropriate state of mind the Committee apparently accepted this construct and focused — mistakenly — on whether Stepovich was aware of Rule 1.8(c) or had learned its substance in law school or continuing legal education courses. But the question under the ABA Standards is not whether Stepovich knew of a particular ethics rule, but whether he knew the nature of his conduct. Ignorance of the rules is no excuse and in fact is itself blameworthy.[25]

---

[23](...continued) anything about it.

[24]    *See In re McKechnie*, 670 N.W.2d 864, 870 (N.D. 2003) ("Knowledge can be inferred from the lawyer's conduct in the circumstances." (citing *In re LaQua*, 548 N.W.2d 372, 376 (N.D. 1996))).

[25]    Alaska R. Prof. Conduct pmbl. ("Every lawyer is responsible for observance of the Rules of Professional Conduct."); *Standing Policy On Informal Ethics Guidance*, ALASKA BAR ASSOCIATION (Oct. 25, 2013), https://www.alaskabar.org/servlet/content/standing_policy_informal_ethics_guidance .html (noting that it is "an attorney's own duty to be aware of the requirements of the Rules of Professional Conduct"); *see also Attorney Grievance Comm'n of Md. v. Stein,*
(continued...)

We conclude that these facts establish at least knowledge: Stepovich knew that the will he drafted identified himself as the contingent beneficiary and created an obvious conflict of interest, the potential consequences of which he paused to contemplate. We conclude that Stepovich acted knowingly.

### c. Injury

Alaska's comment to Rule 1.8 provides: "If effectuation of a substantial gift requires preparing a legal instrument such as a will or conveyance the client should have the detached advice that another lawyer can provide."[26] The injury we address here is the frustration of the client's right to "detached advice," which in turn raises questions of undue influence and the will's validity. Stepovich argued to the Board that "although there was potential harm, there was no actual harm" because "[c]onfusion is not something that people can . . . draft out of any instrument," and "[t]he only way that any harm would be done is if the contingency actually came to pass." But even if some confusion is likely in a probate case, an attorney should not add to it by conduct that is proscribed by the ethics rules.

Other courts have identified some of the dangers created when an attorney prepares a will in which the attorney is named as beneficiary, including "the attorney's

---

[25](...continued)
819 A.2d 372, 379 (Md. 2003) ("Respondent's defense of ignorance of the rule is no defense at all. Lawyers admitted to practice in [Maryland] are deemed to know the Rules of Professional Conduct and have the obligation to act in conformity with those standards as a requirement to practice law."); *In re Kalled*, 607 A.2d 613, 616 (N.H. 1992) ("The lack of professional responsibility exhibited by the respondent disturbs us greatly. For example, . . . the respondent alleges that he was not aware that it was a violation of the New Hampshire Rules of Professional Conduct for him to prepare an instrument, *i.e.*, a will, from which he would benefit until Rule 1.8(c) was pointed out to him by the committee.").

[26] Alaska R. Prof. Conduct 1.8 cmt. Gifts to Lawyers.

incompetency to testify, . . . the attorney's ability to influence the testator, . . . jeopardy to probate of the entire will if its admission is contested, . . . harm to other beneficiaries[,] and the undermining of the public trust and confidence in the legal profession."[27] Furthermore, "[s]eldom is the client's dependence upon, and trust in, his attorney greater than when, contemplating his own mortality, he seeks the attorney's advice . . . in the preparation of a will."[28] Once deceased, of course, "[t]he client will have no opportunity to protect himself from the attorney's negligent or infamous misconduct."[29]

While a will contest may have been likely in this case regardless of Stepovich's involvement, his client suffered a real injury when he did not receive the "detached advice" to which he was entitled. And whether future harm to the administration of the client's estate was actual or only potential does not matter under the ABA Standards, which in this context address "injury or potential injury to a client" as equally important concerns.[30]

### d. A six-month suspension is the starting point.

Given the knowing violation that caused "injury or potential injury" to the client, we find the appropriate sanction under ABA Standards § 4.32: "Suspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client." The ABA Standards further provide that suspension, to be effective,

---

[27] *Stein*, 819 A.2d at 376.

[28] *Disciplinary Counsel v. Galinas*, 666 N.E.2d 1083, 1086 (Ohio 1996).

[29] *Id.*

[30] *See* STANDARDS FOR IMPOSING LAWYER SANCTIONS § 4.32 (AM. BAR ASS'N 2015).

"should be for a period of time equal to or greater than six months."[31] Though we have sometimes imposed shorter suspensions,[32] we more recently observed that "if suspension is indicated, a six-month suspension is the baseline."[33]

### e.    Aggravating and mitigating factors

Our next step is to determine whether the suspension should be shorter or longer because of aggravating and mitigating factors.[34] "[T]here is no 'magic formula' for determining how aggravating and mitigating circumstances affect an otherwise appropriate sanction. 'Each case presents different circumstances which must be weighed against the nature and gravity of the lawyer's misconduct.' "[35] In this case we consider the following aggravating factors from ABA Standards § 9.2:  (1) prior disciplinary offenses;[36] (2) the vulnerability of the victim;[37] and (3) the attorney's substantial experience in the practice of law.[38] We also consider the following mitigating

---

[31]    *Id.* § 2.3.

[32]    *In re Ford*, 128 P.3d 178, 184 (Alaska 2006) (noting our imposition of 90-day suspensions in three prior cases).

[33]    *In re Cummings*, 211 P.3d 1136, 1140 (Alaska 2009) (applying the six-month "baseline" of § 2.3 to a judicial discipline case).

[34]    *See In re Cyrus*, 241 P.3d 890, 893 (Alaska 2010) (citing *In re Hanlon*, 110 P.3d 937, 941-42) (Alaska 2005)).

[35]    *In re Friedman*, 23 P.3d 620, 633 (Alaska 2001) (quoting *In re Buckalew*, 731 P.2d 48, 54 (Alaska 1986)).

[36]    STANDARDS FOR IMPOSING LAWYER SANCTIONS § 9.22(a) (AM. BAR ASS'N 2015).

[37]    *Id.* § 9.22(h).

[38]    *Id.* § 9.22(i).

factors from ABA Standards § 9.3: (1) absence of a dishonest or selfish motive;[39] (2) remorse;[40] (3) full and free disclosure to the disciplinary board or a cooperative attitude toward discipline proceedings;[41] and (4) inexperience in the practice of law.[42]

### i. The "prior offenses" aggravator

Stepovich has prior discipline arising out of three separate incidents over a span of 20 years. The Board's discussion of prior discipline appeared to take into account only the immediately preceding trust fund violation, which Bar Counsel argued to the Board was "[d]istant and different," involving "different issues, different rule violations than the one that's here." According to the commentary to ABA Standard § 9.22, "[i]n evaluating whether prior offenses constitute an aggravating factor, courts generally look to the timing of the current offense in relation to the prior offense, similarities in the misconduct, the number of prior offenses, and the relative recency of the prior offense."[43] The commentary notes that "[c]ourts also have found that a prior offense can be too remote in time to be considered aggravating," leading them to apply "remoteness of prior offenses" as a mitigator under ABA Standard § 9.32(m).[44] But "[i]n

---

[39]     *Id.* § 9.32(b).

[40]     *Id.* § 9.32(*l*).

[41]     *Id.* § 9.32(e).

[42]     *Id.* § 9.32(f).

[43]     STANDARDS FOR IMPOSING LAWYER SANCTIONS § 9.22 cmt. Prior Disciplinary Offenses Generally at 418 (AM. BAR ASS'N 2015).

[44]     *Id.* cmt. Timing of Prior Disciplinary Offenses at 420; *see also id.* § 9.32 cmt. Remoteness of Prior Offenses at 495 ("The remoteness of a prior disciplinary offense is often considered when a court is weighing the significance of a prior disciplinary offense as an aggravating factor under Standard 9.22(a).").

other instances, courts will still find a prior offense to be an aggravating factor, but lessen its weight due to remoteness in time."[45]

When we consider the "prior offenses" aggravator in this case, remoteness does not lessen the weight we give it. While the earliest offenses date back decades, Stepovich wrote the will at issue six months after reinstatement following the serious trust fund violation, while a stayed year of suspension was still pending. The trust fund violation cannot be characterized as remote or distant. And while the instances of Stepovich's misconduct are not all similar, a lawyer with a history of professional discipline should be familiar with the Rules of Professional Responsibility and particularly apt to tread carefully in circumstances that are ethically uncertain.

### ii. The "substantial legal experience" aggravator

Stepovich's substantial legal experience also aggravates his misconduct. Although he had limited experience in probate matters, an attorney with his 32 years of practice should nonetheless have recognized the conflict at issue here.[46] And Alaska Rule of Professional Conduct 1.1, "Competence," required Stepovich to ensure he had "the legal knowledge, skill, thoroughness and preparation reasonably necessary" to write his client's will.[47]

---

[45]     *Id.* § 9.22 cmt. Timing of Prior Disciplinary Offenses at 421.

[46]     Stepovich testified that he had some probate experience. He explained that he "learned from one of [his] mentors . . . to set up estates" in wrongful death cases and that he had written simple wills for friends, though if they got complicated he advised them to seek advice elsewhere. He does not argue that the will at issue here was complicated, or that its complexity contributed to his misconduct.

[47]     Alaska R. Prof. Conduct 1.1 ("A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.").

### iii. The "victim's vulnerability" aggravator

The Committee found that Stepovich's client "may have been vulnerable at the time [Stepovich] drafted the will in question." The Committee explained that the client "was gravely ill with cancer, and while [Stepovich] may not have known how ill he was, [Stepovich] was aware he was ill." The Disciplinary Board did not discuss this finding. We conclude that the client was vulnerable and therefore give weight to this factor.

### iv. The "motive" mitigator

Though his client was vulnerable, Stepovich did not take advantage of that vulnerability. There is no dispute about his motive; the parties agree it was not dishonest or selfish. Stepovich did not expect to inherit, and he testified that he agreed to be named as contingent beneficiary only because the client, his long-time friend, insisted on it. The lack of a dishonest motive is a weighty mitigator; we have treated it as such in the past.[48]

### v. The "remorse" mitigator

The Committee also found that Stepovich was remorseful, and the Committee was in the best position to judge the sincerity of the testimony on this issue. While the commentary to ABA Standard § 9.32 notes that "[a] lawyer's remorse for misconduct can be considered in mitigation," it also says that "remorse is insufficient to outweigh very serious underlying misconduct."[49] But remorse is typically among

---

[48] *In re Rice,* 260 P.3d 1020, 1033 (Alaska 2011) ("[W]e are inclined to place a great deal of weight on the absence of dishonest and selfish motives."); *In re Cyrus*, 241 P.3d 890, 894 (Alaska 2010) (mitigating disbarment, recommended under the ABA Standards, to suspension because of the absence of a dishonest or selfish motive, even where the attorney had prior disciplinary offenses, substantial experience in the practice of law, and additional aggravating factors).

[49] STANDARDS FOR IMPOSING LAWYER SANCTIONS § 9.32 cmt. Remorse at

(continued...)

"several compelling mitigating factors" we consider in determining an appropriate sanction.[50]

### vi. The "cooperation" mitigator

Stepovich argues that his cooperation during the disciplinary process is a mitigating factor, and the Committee agreed. But Stepovich came forward only after the Bar had begun its investigation; in past cases we have concluded that cooperation at that stage is not a significant mitigator.[51] In *In re Buckalew* the offending attorney reported to the Bar that he had falsified a settlement agreement and embezzled from trust accounts to pay his client.[52] But the attorney made this disclosure only after his law partner had

---

[49](...continued)
492, 494 (AM. BAR ASS'N 2015).

[50]     *See In re Ivy*, 374 P.3d 374, 385 (Alaska 2016) (noting that "we have reduced an ABA-recommended sanction given the presence of several compelling mitigating factors, such as evident remorse, active efforts to remedy the problems caused, and voluntarily notifying authorities about the misconduct soon after it occurred" and separately noting that "we 'place a great deal of weight on the absence of dishonest and selfish motives' " (quoting *In re Rice*, 260 P.3d at 1033)); *In re Disciplinary Matter of Friedman*, 23 P.3d 620, 633 (Alaska 2001), *as corrected on denial of reh'g* (June 7, 2001) (reducing from disbarment to three-year suspension to reflect "absence of a prior disciplinary record; good character or reputation; delay in disciplinary proceedings . . . ; and remorse"); *In re Mann*, 853 P.2d 1115, 1119 (Alaska 1993) (reducing recommended sentence from disbarment to three-year suspension in consideration of "personal or emotional problems; timely good faith effort to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and remoteness of prior offenses").

[51]     *In re Hanlon*, 110 P.3d 937, 943-44 (Alaska 2005) (finding an aggravator, not a mitigator, when the attorney initially deceived the Bar only to "cooperate" later); *In re Buckalew*, 731 P.2d 48, 55 (Alaska 1986).

[52]     731 P.2d at 49.

discovered the fraud.[53] We held that in those circumstances the attorney's " 'voluntary disclosure' carrie[d] little weight. . . . While cooperation and disclosure are to be strongly encouraged, not every act of that sort deserves full mitigative effect."[54]

We acknowledge that Stepovich could not have been expected to come forward before the Bar filed its petition if he only then became aware that his conduct violated Rule 1.8. But it would be unacceptably anomalous to hold that ignorance of the ethics rules — which itself is an ethical violation — could suspend an attorney's duty to cooperate with the Bar. Stepovich's cooperation is a mitigating factor, but we give it little weight.

### vii. The "inexperience in the practice of law" mitigator

The ABA Standards list as a mitigating factor "inexperience in the practice of *law*" rather than inexperience in the relevant area of practice.[55] For the same reasons that Stepovich's "substantial experience in the practice of law" is an aggravating factor, his lack of significant experience in probate law is not a mitigator.

### viii. Weighing the aggravators and mitigators

Three significant aggravating factors apply: prior offenses, substantial experience in the practice of law, and a vulnerable victim. Three mitigating factors apply: lack of a dishonest or selfish motive, which is significant, and remorse and cooperation, which both carry less weight. The Disciplinary Board did not comment on how it weighed each factor, noting in its written decision only that "[t]he serious nature of the prior ethical violation is an aggravating factor which must be afforded significant

---

[53]    *Id.* at 55.

[54]    *Id.*

[55]    STANDARDS FOR IMPOSING LAWYER SANCTIONS § 9.32(f) (AM. BAR ASS'N 2015) (emphasis added).

weight." The Board increased the Committee's recommended sanction of public censure to a six-month suspension, apparently based only on Stepovich's most recent prior offense. We agree that the prior offenses are entitled to the most weight as an aggravator.

### 2. A 12-month suspension is significant and appropriate.

In reaching an appropriate sanction we also consider relevant case law. The parties direct us to only one instance in which an Alaska lawyer was disciplined for violating Rule 1.8(c); the confidential proceeding apparently involved a negligent violation and "[m]itigating factors [that] reduced [the attorney's] discipline . . . from a public reprimand to a written private admonition." Besides these important distinguishing details, the facts of the case are not available, and we therefore find it unhelpful to our analysis.

Bar Counsel cites cases from two other jurisdictions that resulted in reprimands. In *Florida Bar v. Miller*, an attorney drafted a will for a client friend who asked that the attorney be the contingent beneficiary.[56] The attorney drafted the will as requested and eventually inherited $200,000.[57] The court issued only a public reprimand because of significant mitigating circumstances, including "forty years [of legal practice] with an unblemished record" and the fact that the attorney did not expect to inherit.[58] Furthermore, because the Rules Regulating the Florida Bar were not yet in effect when

---

[56] 555 So. 2d 854, 855 (Fla. 1990).

[57] *Id.*

[58] *Id.*

the will was prepared, the court was guided only by ethical considerations that were merely advisory.[59]

On similar facts but after promulgation of the Rules Regulating the Florida Bar, the Florida Supreme Court suspended an attorney for 90 days in *Florida Bar v. Anderson*, noting that *Miller* did not inform the sanction because it was not decided under the rules.[60] The court imposed a suspension in *Anderson* despite the absence of aggravating circumstances or "real injury" and despite the fact that the attorney was only attempting to effectuate his client's intent through the "inartful" devise.[61]

We also distinguish the other case cited by Bar Counsel. The attorney in *In re Boulger* drafted a will for a friend and included himself as a beneficiary, contingent on the earlier deaths of his friend's two sons.[62] The attorney argued that his conduct did not violate North Dakota's version of Rule 1.8(c) at all because the contingency was so unlikely to occur that the bequest could not constitute a "substantial" gift.[63] The court disagreed; it pointed out that "the intent of the rule is to [e]nsure the client receives 'detached advice' from a lawyer with no interest in the matter."[64] But the court still found that the conflict of interest "did not result in injury to [the attorney's] client" and that the negligent conduct warranted a private reprimand under a standard analogous to

---

[59] *Id.*

[60] 638 So. 2d 29, 30 (Fla. 1994).

[61] *Id.* at 29-30.

[62] 637 N.W.2d 710, 711 (N.D. 2001).

[63] *Id.* at 712.

[64] *Id.*

ABA Standards § 4.33.[65] Unlike this case, however, in *Boulger* no factors aggravated the violation and several factors mitigated it.[66]

The court did not explain its conclusion in *Boulger* that the conduct at issue was only negligent, a conclusion that differs from ours, as explained above. Furthermore, we purposely depart from cases decided on similar facts that find no injury to the client.[67] Courts recognizing the harm caused when a client does not receive "detached advice" in the writing of a will have imposed sanctions including indefinite suspensions.[68]

As noted above, we follow the ABA Standards to hold that a six-month suspension is an appropriate starting point for a knowing violation of Rule 1.8(c) that

---

[65] *Id.* at 714.

[66] *Id.*

[67] *Id.* at 714 ("Boulger's misconduct did not result in injury to his client."); *Florida Bar v. Anderson*, 638 So. 2d 29, 29-30 (Fla. 1990) (adopting findings of fact including that "[n]o real injury resulted from [the attorney's] actions" but that "[p]otential injury to the legal system or legal profession was reasonably foreseeable").

[68] *See, e.g., In re Polevoy*, 980 P.2d 985, 987-88 (Colo. 1999) (suspending for one year and one day an attorney who drafted a self-benefitting will for a vulnerable client, though dishonesty was not proven); *In re McCann*, 669 A.2d 49, 58-59 (Del. 1995) (suspending for one year an attorney who drafted a self-benefitting will and committed several other violations, including falsifying evidence); *Attorney Grievance Comm'n of Md. v. Stein*, 819 A.2d 372, 379 (Md. 2003) (indefinitely suspending an attorney named as a residuary legatee in his client's will and listing the potential harms from the violation of Rule 1.8(c)); *In re Kalled*, 607 A.2d 613, 615-16 (N.H. 1992) (suspending for five years an attorney who prepared a self-benefitting will for a vulnerable client and charged excessive fees to another client, though "there was no finding that these violations involved dishonesty, fraud, deceit or misrepresentation"); *Disciplinary Counsel v. Galinas*, 666 N.E.2d 1083, 1087 (Ohio 1996) (indefinitely suspending an attorney who, in accordance with the client's wishes, wrote himself in as beneficiary and executor of his client's estate).

causes actual or potential harm.[69] But this sanction is further aggravated in this case by Stepovich's prior disciplinary history, his experience in the practice of law, and the vulnerability of the victim. The most significant of these is the prior discipline. As noted above, the Disciplinary Board and the Committee appear to have considered as an aggravator only Stepovich's most recent violation, overlooking the older instances of misconduct. The aggravator is therefore more significant than the Committee and the Board recognized.[70] But we do agree with the Board that the "prior ethical violation [resulting in the 2006 suspension] is an aggravating factor which must be afforded significant weight," particularly because the violation of Rule 1.8(c) occurred during what was in effect a one-year probationary period.

The most significant factor on the other side of the balance is Stepovich's lack of a dishonest or selfish motive, on which "we are inclined to place a great deal of weight."[71] Weighing all aggravators and mitigators in the balance, the significance of the prior-offenses aggravator in this case persuades us to increase the sanction by another

---

[69]     See STANDARDS FOR IMPOSING LAWYER SANCTIONS § 4.32 (AM. BAR ASS'N 2015) ("Suspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client."); *id.* at § 2.3 (providing that suspensions, to be effective, "should be for a period of time equal to or greater than six months").

[70]     We cannot discern from the record whether the Board and the Committee were aware of Stepovich's older offenses and chose to give them little weight or were simply unaware of them. We consider them relevant; prior disciplinary actions arising out of three separate incidents necessarily carry more weight than would a single prior offense. *See id.* § 9.22 cmt. Timing of Prior Disciplinary Offenses at 421 ("[C]ourts [may] still find a prior offense to be an aggravating factor, but lessen its weight due to remoteness in time.").

[71]     *In re Rice*, 260 P.3d 1020, 1033 (Alaska 2011).

six months, and we therefore suspend Stepovich from the practice of law for a total of 12 months.

**B.    This Violation Is Not The "Same [As] Or Similar To" The Preceding Trust-Account Violation.**

Our 2006 order suspending Stepovich from the practice of law provided, in part, that "[i]f [he] is reinstated, for the next year he will be subject to the stayed suspension as follows:  If he engages in the same or similar misconduct, and if the Disciplinary Board or the Court imposes discipline for the new misconduct, the present matter may be remanded directly to the Court for review and imposition of the one-year stayed suspension."[72]   The ABA Standards go further:   Section 8.1 recommends disbarment if a lawyer either knowingly violates a prior disciplinary order or knowingly engages in misconduct that is the same as or similar to that for which that lawyer has been suspended, if the violation or the "further similar acts of misconduct . . . cause injury or potential injury to a client, the public, the legal system, or the profession." Because we impose discipline for Stepovich's violation of Rule 1.8(c), we must determine whether this violation is the same as or similar to the one that immediately preceded it.  We decide that it is not.

In the 2006 case, Stepovich stipulated that he knowingly misappropriated client funds and failed to preserve client property in violation of ABA Standards § 4.12. Misappropriation of client funds is clearly antagonistic to a client's interests, but the Board in the 2006 case did not characterize Stepovich's conduct as a failure to avoid a conflict of interest.

Hearing this subsequent case, the Committee found that the conduct in the two cases was dissimilar because the wording of the 2006 suspension order "was limited

---

[72]    *In re Stepovich*, 143 P.3d 963, 964 (Alaska 2006).

to further trust fund violations." As noted above, the Board announced orally that it disagreed with the Committee's finding on this issue but in its later written decision ostensibly took no position on it, finding that the prior ethical violation "must be afforded significant weight, whether or not" the violations were the "same or similar." On appeal Bar Counsel supports Stepovich's position, asserting that his Rule 1.8(c) violation is "dissimilar in nature and involves a different disciplinary rule" and that the previous stipulation "limited the conditional imposition of the one year suspension to further trust fund (Rule 1.15) violations."

This is our first occasion to consider the meaning of "same or similar" in this context.[73] The most obvious cases of "the same or similar" misconduct involve repeated violations of the same ethical rules[74] or similar patterns of misbehavior.[75] The

---

[73] *See In re Cyrus*, 241 P.3d 890, 891, 894 (Alaska 2010) (stating that we earlier had "suspended Cyrus . . . and publicly censured him for professional misconduct based on five [similar] complaints" and noting that both cases involved the same conduct "of neglecting his clients and delaying court matters," but not defining "same" or "similar").

[74] *See, e.g.*, *Iowa State Attorney Disciplinary Bd. v. Silich*, 872 N.W.2d 181, 192 (Iowa 2015) (agreeing with Board that prior public reprimand "for lack of diligence, failure to comply with a court ruling, inadequate communication, and failure to expedite litigation" was "similar" to later misconduct and an "aggravating factor" in a matter alleging the same failings in other cases); *In re VanDerbeek*, 101 P.3d 88, 101 (Wash. 2004) ("Because VanDerbeek's 1987 reprimand and the charges alleged in count I of this action both pertain to violations of [Rule] 8.4(c), the hearing officer properly concluded that VanDerbeek's prior offense is similar to the matter at hand . . . ."); *see generally* STANDARDS FOR IMPOSING LAWYER SANCTIONS § 8.1 cmt. at 388-90.

[75] *See In re Friedland*, 416 N.E.2d 433, 438-39 (Ind. 1981) (noting that two successive disciplinary proceedings "establish[] a pattern indicative of a serious behavioral flaw" where the attorney was first suspended for "undignified and discourteous conduct" before the court, then later accused of intimidating witnesses in

(continued...)

two violations at issue here involved different rules.  Only by characterizing the 2006 misappropriation of client funds very broadly — as the failure to avoid a conflict of interest — can we view the violations in the two cases as similar.  Such a broad interpretation seems unwarranted, as almost any violation of a lawyer's duty to his client could be broadly characterized in this way as a conflict of interest.  We conclude that Stepovich's violation of Rule 1.8(c) is not the same as or similar to the misconduct for which he was suspended from practice in 2006, and we therefore do not impose the stayed year of suspension from the 2006 disciplinary matter.

C. **Stepovich Must Take And Pass The Multistate Professional Responsibility Exam As A Condition Of Reinstatement.**

Given that Stepovich's defense included the argument that he was not aware of Rule 1.8 or the seriousness of the conflict of interest created by his conduct, we consider it appropriate that, as a condition of reinstatement, he be required to take and pass the Multistate Professional Responsibility Exam (MPRE).

## V. CONCLUSION

Michael A. Stepovich is suspended from the practice of law in Alaska for 12 months, to take effect 30 days from the date of this opinion.  As a condition of reinstatement he is required to take and pass the MPRE.

---

[75](...continued)
the resulting disciplinary proceeding (citing *In re Friedland*, 376 N.E.2d 1126 (Ind. 1978))).